THE LINCOLN PARK COAL AND BRICK COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (OTTO DRENGWITZ, Plaintiff in Error.)

*Opinion filed April 24, 1925—Rehearing denied June 10, 1925.*

1. WORKMEN'S COMPENSATION—*the Compensation act should be liberally construed.* The Workmen's Compensation act should be liberally construed so as to carry out its manifest purpose.

2. SAME—*an employee is entitled to compensation for an injury caused by X-ray burn during examination required by employer.* In a proceeding under paragraph (*h*) of section 19 of the Compensation act on the ground of recurrence or increase of disability, an employee is entitled to compensation for an injury caused by an X-ray burn suffered during an examination required by the employer and conducted by a physician selected by the employer, even though the employer had voluntarily paid compensation for the original injury suffered in the course of the employment and the physical examination was required after the employee had petitioned for further compensation.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

A. W. KERR, and JOSEPH A. LONDRIGAN, for plaintiff in error.

ANDRUS, TRUTTER & CROW, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This writ of error was issued to bring into review before this court the judgment of the circuit court of Sangamon county reversing and setting aside an award made to Otto Drengwitz, an employee of the Lincoln Park Coal and Brick Company.

Drengwitz (hereafter called plaintiff in error) was accidentally injured in the course of and in the line of his employment with the Lincoln Park Coal and Brick Company (hereafter referred to as defendant in error) February 24,

1921. He was voluntarily paid by defendant in error compensation to the amount of $533.07. He returned to work but claimed he had only partly recovered and that he was entitled to further compensation. This was not agreed to by defendant in error, and plaintiff in error filed an application for adjustment of his claim. It was set for hearing before an arbitrator March 12, 1922. Before the hearing defendant in error demanded that plaintiff in error be examined by a doctor selected by defendant in error. Plaintiff in error submitted to the examination on March 10, in the course of which X-ray pictures were made by the doctor. March 12, the day the application was set for hearing, and after the parties had received the report of the doctor who made the examination, an agreement was made between the parties for a settlement of the claim upon the payment of $200, which was approved by the Industrial Commission. About three days later plaintiff in error discovered he had been burned on the abdomen by the X-ray machine, and went to Dr. Metcalf, who was not the doctor who made the examination, and Dr. Metcalf began treating him for the burn. The evidence discloses the burn caused a rather serious condition for plaintiff in error, and he has been in a hospital a considerable time under treatment of Dr. Metcalf and Dr. Milligan. April 24, 1922, and while plaintiff in error was under treatment for the burn, he filed a petition for review under paragraph (*h*) of section 19 of the Compensation act, alleging his disability had increased and recurred. In June, 1922, the doctor who caused the burn in making the examination, told plaintiff in error (so plaintiff in error testified) that Dr. Metcalf said he would be all right in ten days. The doctor told him he would be well by the 15th, and paid him $224 compensation up to that time and also paid a bill to Dr. Metcalf of $150. The doctor testified the payment was a settlement of the damage resulting from the burn. Plaintiff in error testified he signed some kind of paper when the doctor paid him the

money; that he could not read English, did not read the paper, and it was not read to him. The doctor testified he read the paper to him, but the paper itself was not offered in evidence. The petition filed under paragraph (*h*) of section 19 was heard by the Industrial Commission in January, 1923. Plaintiff in error was then in a hospital under treatment for the burn and unable to appear at the hearing, but his deposition was read. An award was made, which not being acceptable to plaintiff in error, he secured a review of it by the circuit court, where the award was set aside and the case remanded to the Industrial Commission for further hearing. It was again heard by the commission. An award was made finding that the disability had recurred and increased and that plaintiff in error was wholly and permanently incapable of work, and defendant in error was ordered to pay him $12 per week for 230-57/100 weeks, commencing April 24, 1922, and thereafter a pension for life of $23.33 per month, and the further sum of $382.75 on account of medical and hospital services. Defendant in error secured a review of the award by the circuit court, and that court set aside and reversed the finding and award of the Industrial Commission. This court granted a writ of error to review the judgment of the circuit court.

No question is raised about plaintiff in error having received an injury in February, 1921, in the course of and arising out of his employment, that the parties were under and subject to the Workmen's Compensation act, and that defendant in error admitted its liability by paying compensation to the amount of $533.07.

After defendant in error failed and refused to pay further compensation claimed, plaintiff in error filed his petition under paragraph (*h*) of section 19, and the hearing on the petition was set for March 12. Section 12 of the Workmen's Compensation act provides that an injured employee, when so required by the employer, shall submit

himself, at the employer's expense, to examination by a physician or surgeon selected by the employer, "for the purpose of determining the nature, extent and probable duration of the injury received by the employee, and for the purpose of ascertaining the amount of compensation which may be due to the employee from time to time for disability according to the provisions of this act." Said section further provides that if the employee refuses to submit to the examination his right to compensation shall be suspended and no compensation paid him during the period he refuses to be examined. The examination of plaintiff in error made March 10 was required by defendant in error to be submitted to by plaintiff in error and that it be made by a doctor of its selection and was for its benefit and interest. During the examination an X-ray machine was used and the burn caused. The evidence shows the burn to be of a serious nature. The medical testimony is that such injuries rarely heal permanently and generally give trouble. They may apparently heal and then recur. The proof shows plaintiff in error was incapacitated from doing any kind of work and had spent considerable time in a hospital under treatment of two physicians.

Plaintiff in error contends that as he was required by defendant in error to undergo the examination by the doctor who was its agent in making the examination, the injury inflicted by the examination is the proximate result of the original injury. Defendant in error contends the proceeding authorized by paragraph (*h*) of section 19 is for compensation for a recurrence or increase of disability from the original injury and does not authorize an award of compensation for injury from any intervening cause; that the burn, although resulting from the examination which the law authorized defendant in error to require plaintiff in error to submit to, was in no sense a recurrence or increase of the disability for which compensation was authorized

317–20

and in no way was connected with or related to the injury for which compensation was claimed.

The question is a novel one, and counsel for defendant in error say diligent search has failed to disclose any case which has decided the exact question. They contend the weight of authority is that the employer is not liable, under the Workmen's Compensation act, for injury resulting from malpractice of a physician. They admit that is a different question from the one here involved but say there is some analogy between the two questions.

There is no dispute that plaintiff in error had, in fact, received an injury which entitled him to compensation, and he was voluntarily paid $533.07. Defendant in error claimed that was all plaintiff in error was entitled to receive. Plaintiff in error claimed he had not been paid all he was entitled to receive and filed the petition for compensation. For the purpose of determining whether he was entitled to any further compensation for the injury defendant in error required him, as it was authorized by law to do, to undergo an examination by a doctor of its selection, in the course of which he received the burn. It is true, the burn was not literally a recurrence or increase of the original injury, but it is also true it never would have occurred if defendant in error had not required the examination for the purpose of determining the nature, extent and probable duration of the injury for which it admitted liability. Defendant in error refused to pay further compensation until the nature, extent and probable duration of the disability could be ascertained, and required plaintiff in error to submit to an examination by a physician of its selection to determine that question. If there had been no injury there would have been no examination, and if there had been no examination there would have been no burn. The burn resulted in the examination which the law authorized defendant in error to require to be made to ascertain whether

plaintiff in error was entitled to further compensation for the injury of February, 1921. In undergoing the examination plaintiff in error received the injury for which he asks compensation. It is true, the injury did not aggravate the original injury or cause a recurrence or increase of the disability directly caused by that injury, but it was so connected with and related to the original injury that if the law will authorize it the award should be sustained. Such an injury is not expressly provided for by the Workmen's Compensation act, but that act should be, and is, liberally construed in endeavoring to carry out its manifest purpose and intention, and a few of our decisions, while not deciding the question here involved, have some tendency to support a construction which would authorize an award in this case.

*Mt. Olive Coal Co.* v. *Industrial Com.* 295 Ill. 429, held an award for total disability cannot be sustained where it can be remedied by a minor operation; that in such a case the permanent disability is due to the refusal to submit to the operation and not to the injury; that if the employee is required to submit to an operation the employer is liable for the expense, and if not successful he is liable for whatever permanent disability remains, and also for surgical and hospital bills. If the operation is successful the employer is liable for the employee's loss of time and surgical and hospital expenses. That decision was not based entirely upon the letter of the statute but was the construction given the act to carry out its purpose. The same may be said of *Joliet Motor Co.* v. *Industrial Board,* 280 Ill. 148.

We considered in *Hammond Co.* v. *Industrial Com.* 288 Ill. 262, the case of an employee who was injured in November, 1914. The injury caused an abscess to form on his leg and required surgical and hospital treatment. The abscess was opened, the pus drawn out and an operation was performed on the bone, which weakened it. Months afterwards he fell while getting out of bed in the hospital and broke his leg at the place where it had been weakened by

the operation. Severe hemorrhage resulted from the fracture, and another operation was performed in September, 1915, nearly a year after the original injury. The employee died a few hours thereafter from hemorrhage and shock. The employer contended the death was not due to the original accidental injury but was due to an intervening cause. The court said: "But plaintiff in error contends Bonkowski's death did not result from that injury but was due to his fall in the hospital, which intervened between the accident received where he was employed and the death. The testimony of the physician who treated Bonkowski was, in substance, that the abscess on his thigh was caused by an external injury; that the pus which had formed had eaten through and destroyed the tissue and blood vessels and attacked the bone, which necessitated curetting and chiseling away a part of the bone. This weakened the bone, and while getting out of bed the limb gave way, Bonkowski fell to the floor and the femur broke at the place it was eaten by disease. He was operated on six days later and died from the shock the same day. The Industrial Commission was warranted by the proof in finding death resulted from the injury."

In *Bailey* v. *Industrial Com.* 286 Ill. 623, an employee suffered a fracture of the leg. After he had partially recovered, while walking on the sidewalk he fell and again broke his leg at the same place. The court said whether the injury was the result of an independent intervening cause was a question of fact, which was settled by the decision of the Industrial Commission.

In *Kivish* v. *Industrial Com.* 312 Ill. 311, the employee received an accidental injury April, 1919. He was treated for some months, when the insurance company which was paying him compensation demanded that he go, at the company's expense, to a hospital in St. Louis, and he was taken there in January, 1920, and died there February 7 following. The hospital records did not sustain the testimony of

the doctors as to the treatment given the employee. One of his injuries was a contused knee, but there was no fracture. The doctors claimed they put the knee in a cast. The hospital records did not show that but showed weights wer· attached to the leg, treatment by baking and massage, and by many kinds of drugs. He suffered great pain. A son of Kivish testified, without objection, he visited his father in the hospital when he was dying; that there were doctors around him, and his father said, "I am gone; they killed me." The doctors testified he developed influenza January 27 and died from it February 7. The doctors who treated Kivish in the hospital testified his knee was well at the time he developed influenza and he was walking about in the ward, and his death was caused by influenza-pneumonia. While the question here presented was not directly involved in that case, what the court said is pertinent as showing what the court's views were. The court said: "Two things are certain: one, that he was severely injured in the line of his employment and that he never recovered from those injuries; and the other, that he went to the hospital for treatment in compliance with the demands of the insurance company which was paying the compensation due the injured employee from his employer. We have held that while the employee must submit to proper treatment at the request of the employer or forfeit his right to compensation, the employer is, on the other hand, liable for the consequences of a surgical operation to which the injured employee submits in compliance with the employer's demand."

It has been held by courts of other States that where a weakened condition of the employee is caused by an accidental injury and death results from some disease developed later, such as bronchitis, erysipelas, influenza, blood poison, bed sores caused by long confinement in bed, and the like, death will be attributed to the injury. *In re Fidelity and Deposit Co.* (Mass.) 105 N. E. 601.

Plaintiff in error cites a decision of the Supreme Court of Oklahoma (*Booth & Flynn* v. *Cook,* 193 Pac. 36,) where the court said: "We are aware that in negligence cases not arising under compensation acts many courts hold that the master's liability ceases when he exercises reasonable care in selection of a competent physician or surgeon, but workmen's compensation acts are a departure from cases of liability resulting from negligence and fix specific amounts of recovery for the ultimate result of the accident. To hold otherwise, where the disability has been increased by the intervening negligence or carelessness of the employer's selected physician, would be to defeat one of the purposes of the act."

Defendant in error refers to cases in which the statement was made that the employer was not liable under the Workmen's Compensation act for malpractice of the doctor or so much of the employee's incapacity as results from negligence or lack of skill in medical treatment. The Supreme Court of Wisconsin held in *Pawlak* v. *Hayes,* 162 Wis. 392, that the employee had a choice of remedies. He could hold the employer liable under the Workmen's Compensation act or he could hold the doctor liable. The Supreme Court of Minnesota held otherwise in *Viita* v. *Fleming,* L. R. A. 1916-D, 644. Whatever courts of other States may have decided, to be of value as precedents for our guidance the questions decided must have been like the one here involved and must have arisen under a statute substantially like ours. Counsel for defendant in error admit they have been unable to find any such decisions and we know of none.

We believe it was never contemplated that the statute should authorize the employer to compel an examination by a doctor selected by the employer to determine whether the employee is suffering any incapacity from an injury for which the employer is admittedly liable; and if the doctor making the examination, through negligence or lack of

skill, inflicts an injury which causes disability, the employer should not be liable under the statute. The voluntary payment by defendant in error, upon the report of the examination, of $200, is an admission that the plaintiff in error was suffering some incapacity from the injury of February, 1921, and was not attempting a fraud or imposition upon defendant in error. Our own decisions to which we have referred extend liability to pay compensation beyond the direct effects of the injury, and that seems necessarily to result from the construction that under the statute the employee is compelled, at the demand of the employer, to submit to an examination by the employer's physician or forfeit compensation, and where an operation offers a reasonable prospect of relief from incapacity and is not attended with danger to life, health or extraordinary suffering, the employee must submit to an operation or release the employer from paying him compensation. (*Mt. Olive Coal Co.* v. *Industrial Com. supra.*) Inasmuch as the injury for which plaintiff in error is seeking compensation would not have occurred except for the examination required to be made by the employer, we are of the opinion it is so related to and connected with the injury as to authorize an award of compensation.

We do not overlook the contention of the defendant in error that the proceeding is for compensation for a recurrence or increase of the disability resulting from the accident of February, 1921. In cases to which we have referred, this and other courts have held that where there was an injury which lowered and weakened the vitality of the employee, and an independent disease was contracted which caused death, it would be attributed to the injury and not to the disease. If those decisions are sound,—and we certainly believe they are,—the construction is warranted that defendant in error is liable to pay compensation in this case. The conclusion is warranted that plaintiff in error had not recovered from the incapacity caused by the injury when

the examination was made, and whatever disability he then suffered from the injury of February, 1921, the proof shows was greatly increased by the burn.

Plaintiff in error admits there were included in the award made by the Industrial Commission for medical and hospital services, items in excess of what the law and facts warranted, and that the correct amount allowed for that purpose should have been $254.35, and that is not denied by defendant in error if an award is authorized by law.

The judgment of the circuit court will be reversed and the award of the Industrial Commission, after deducting $128.40 from the award for medical and hospital services, will be affirmed as thus modified.

*Judgment reversed.*
*Award modified and affirmed.*