(No. 52085.—

VERN COLLIER *et al.*, Appellants, v. WAGNER CASTINGS COMPANY *et al.*, Appellees.

*Opinion filed June 20, 1980.*

230

William J. Harte, Ltd., and Scheele, Serkland, & Boyle, Ltd., of Chicago (James C. Serkland and William J. Harte, of counsel), for appellants.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur (Jerald E. Jackson and Keith W. Casteel, of counsel), for appellees.

MR. JUSTICE CLARK delivered the opinion of the court:

At issue in this appeal is whether, assuming the plaintiff's allegations are sufficient to constitute a cause of action for the intentional infliction of emotional distress, such a cause of action will lie against the employer and coemployee defendants in view of sections 5(a) and 11 of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, pars. 138.5(a), 138.11).

The circuit court of Macon County struck plaintiff's complaint for failure to state a cause of action and entered judgment in favor of defendants. The appellate court affirmed, one judge dissenting. (70 Ill. App. 3d 233.) We granted leave to appeal. We affirm.

In considering a motion to dismiss for failure to state a cause of action, plaintiffs' pleaded facts are assumed to be true. According to the complaint, the following are the relevant facts.

Vern Collier (hereinafter referred to as plaintiff) was employed by defendant Wagner Castings Company (hereafter Wagner Co.) on March 17, 1975, when he was stricken with an illness at approximately 4:30 p.m. A coworker of plaintiff telephoned defendant William A. Stogner, a licensed nurse or medical attendant employed by Wagner Co., and said that plaintiff was lying sick on the floor complaining of chest pain. Stogner then undertook a course of action with respect to the plaintiff. He instructed the caller to tell plaintiff to walk under his own power to the first-aid station. This station was known to be located

over 100 feet away and to require the negotiation of 13 descending and four ascending stairs. The caller told Stogner that the plaintiff appeared too sick to exert the effort necessary to reach the first-aid station. Stogner then instructed the caller to ask the plaintiff whether he could walk to the first-aid station, but Stogner had hung up the phone when the caller returned to it after talking with plaintiff. When finally informed that plaintiff could not reach the station under his own power, Stogner asked the caller to help plaintiff. Unable to help plaintiff by himself, the caller instead requested immediate medical aid for the plaintiff. Stogner apparently agreed to render that aid. A substantial period of time elapsed before Stogner arrived, however.

When he did arrive, Stogner advised plaintiff over a period of 15 minutes that he was suffering from indigestion despite the classic signs and symptoms of impending cardiac arrest: plaintiff was lying on the floor, pale and sweating and complaining of chest pains. Ultimately, after coworkers suggested the possibility of a heart attack, plaintiff was placed on a stretcher and carried to the first-aid station, where he was isolated from family, friends and coworkers for at least three hours, despite his requests for doctor or hospital care.

Stogner then either improperly administered or misinterpreted the results of a blood pressure test, observed plaintiff crawl to a sink and vomit, and proceeded to instruct plaintiff to return to his work area and seek his own relief. After descending four stairs, walking over 100 feet, and ascending 13 more stairs, the plaintiff collapsed and was carried back to the first-aid station. Requests for doctors were denied. A coworker subsequently called plaintiff's wife and informed her of the situation. With her son, she drove 40 miles to remove plaintiff. During this time, Stogner slouched in his chair or leaned against his desk, smoking and reading a book. He did not attempt

to render assistance. He did not help plaintiff's wife or son remove plaintiff from the premises. Plaintiff was taken to a hospital, where he suffered three episodes of cardiac arrest that evening. He has not returned to work. It was alleged that either defendants knew or, in the exercise of ordinary care, should have known that their actions would, "with a high degree of probability, cause severe emotional distress," and that "such distress was certain or substantially certain to result therefrom."

According to the pleadings, defendants Wagner Co., John A. Wagner and John A. Wagner, Jr., promulgated rules and regulations and posted notices which announced a company policy to refuse to pay medical expenses for care obtained without the approval of the company medical attendant. These notices and regulations allegedly intimidated plaintiff from seeking medical care before he did.

In addition to these facts in issue, a prior settlement agreement between some of the parties was submitted for the record. It released Wagner Co. from all liabilities under the terms of the Workmen's Compensation Act in consideration for a lump-sum payment of $14,181.57. This settlement was approved by the Industrial Commission.

In count I, plaintiff alleged that the foregoing conduct was extreme and outrageous and beyond all possible bounds of decency. All of the defendants were alleged to have known, or to have failed to exercise ordinary care in finding out, that their conduct would cause severe emotional distress. Damages in excess of $15,000 were claimed.

Count II of the complaint alleged that defendants, "with utter disregard and indifference" to the safety of plaintiff, breached the statutory duty set forth in section 8(a) of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(a)), requiring employers to provide first aid and medical and surgical services reasonably

required to relieve the effects of accidental injuries. Basically the same facts were used to support this count, and a $15,000 minimum judgment was claimed for physical and mental injuries proximately caused.

Count III realleged the same facts and asked for punitive damages. Count IV, brought on behalf of plaintiff's wife and son, realleged the same facts and asked for damages related to their emotional distress in witnessing defendants' conduct for the period of time during which they came and picked up the plaintiff. They also asked damages for loss of society and companionship, a request which was not renewed in this appeal. Defendants challenge the sufficiency of the pleadings alleging the tort of intentional infliction of emotional distress and the propriety of permitting such a cause of action to go to trial in view of the exclusivity provisions of the Workmen's Compensation Act and in view of a prior settlement agreement entered into by the parties.

We consider first count II of the complaint and those portions of count III which are grounded on count II.

Count II of the complaint was grounded upon the breach of section 8(a) of the Workmen's Compensation Act, which requires employers to provide reasonable medical care to injured employees. (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(a).) This count cannot state a cause of action against defendants Wagner Co., John A. Wagner and John A. Wagner, Jr., because under the pleaded facts they have breached no statutory duty. As far as the pleaded facts are concerned, these defendants made a reasonable effort to supply medical care: an employee was hired for this purpose. Since there are no reasonable allegations that these defendants directed or encouraged Stogner's conduct or had knowledge of his propensity to act as he did, they had a right to expect that injuries resulting from Stogner's care or lack of it would be compensable under the Act (*Lincoln Park Coal & Brick Co. v. Industrial Com.* (1925),

317 Ill. 302) or that they would be liable under the Act for medical care obtained by employees in substitution for care which was supposed to be obtained under the Act. (*Lawrence v. Industrial Com.* (1945), 391 Ill. 80, 90.) (This principle was made part of the statute by Public Act 79—79, approved June 30, 1975, amending, *inter alia,* section 8(a).) As to defendant Stogner, plaintiffs have cited no authority under which section 8(a) created a statutory duty of care, the breach of which, with utter disregard and indifference, would remain uncompensated under the Act.

Plaintiffs do not argue the applicability of section 19(m) of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.19(m)) or of the Health and Safety Act (Ill. Rev. Stat. 1975, ch. 48, pars. 137.1 *et seq.,* 137.5—1), but instead rely solely on *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172. In that case an employee sought benefits under the Act and her employer retaliated by firing her. This court held that a cause of action was stated. The action was necessary to prevent employer abuse of power and to implement and protect the policies of the Act. *Kelsay* cannot be extended, however, as plaintiffs have requested, to permit common law actions for situations covered by the Act or to allow suit against the innocent employer in this case. Insofar as the receipt of compensation under the Act is an inadequate substitute for prompt medical care, that inadequacy also exists in considering subsequent tort suits.

We turn to consider whether, assuming counts I and IV and those portions of count III based on count I state a cause of action for the intentional infliction of emotional distress, such counts are nevertheless barred in the instant case. Section 5(a) of the Workmen's Compensation Act states in pertinent part:

> "(a) No common law or statutory right to recover damages from the employer, his insurer, his broker, any

service organization retained by the employer, his insurer or his broker to provide safety service, advice or recommendations for the employer or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." (Ill. Rev. Stat. 1973, ch. 48, par. 138.5(a).)

Section 11 of the Act similarly states:

"The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in Section 3 of this Act, or of any employer who is not engaged in any such enterprises or businesses, but who has elected to provide and pay compensation for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act, and whose election to continue under this Act, has not been nullified by any action of his employees as provided for in this Act." Ill. Rev. Stat. 1973, ch. 48, par. 138.11.

To escape the bar of these sections, plaintiff would have to prove either that the injury (1) was not accidental (2) did not arise from his or her employment, (3) was not received during the course of employment or (4) was noncompensable under the Act. Taking these situations in reverse order, we conclude first that, in light of this court's decision in *Pathfinder Co. v. Industrial Com.* (1976), 62 Ill. 2d 556, emotional distress is compensable under the Act and, therefore, plaintiff cannot escape the exclusivity provisions on this basis.

The pleaded facts also establish that plaintiff was in the course of his employment when the distress was allegedly inflicted. He was at his place of employment performing his duties when he was stricken with an illness prompting immediately the injuries of which he com-

plains. Because the injuries were sustained during an undertaking related to employment under the pleaded facts, they were sustained during the course of employment. (See *Chicago Transit Authority v. Industrial Com.* (1975), 61 Ill. 2d 78, 83.) Likewise his injuries arose out of his employment. The qualitative increase in the risk of the infliction of emotional distress in the situation here was inextricably connected to his employment. (See *Pazara v. Industrial Com.* (1980), 81 Ill. 2d 76, 83.) In a normal situation plaintiff's choice of doctor and the consequent likelihood that the doctor chosen would inflict emotional distress is a risk personal to him. Here, however, a qualitative increase in the risk of harm results from the company's employment of a medical attendant who is clothed with the apparent power to prevent, in certain circumstances, an employee's receipt of medical care at company expense. Therefore, the injury arose out of plaintiff's employment.

The resolution of this case, therefore, depends upon whether the plaintiff's injuries were accidental within the meaning of the Act. An ambiguity in the law arises from cases in which the term "accidental" has been defined. (See 2A A. Larson, Workmen's Compensation sec. 68.12 (1976).) An injury must be traceable to a definite time, place and cause to be considered accidental within the meaning of the Act. (*Westinghouse Electric Co. v. Industrial Com.* (1976), 64 Ill. 2d 244, 249; *Johns-Manville Corp. v. Industrial Com.* (1975), 60 Ill. 2d 221, 225.) Injuries inflicted intentionally by a coemployee are compensable under the Act as long as those injuries arose out of and in the course of employment (*Associated Vendors, Inc. v. Industrial Com.* (1970), 45 Ill. 2d 203), because the injury is accidental from the employee's point of view. The ambiguity arises from the obvious fact that the injury was intentionally, not accidentally, inflicted.

Taking this analysis one step further, Professor Larson

suggests, and one of our appellate courts has agreed with him, that unless an employer has committed, "commanded or expressly authorized" an assault like that alleged here, "it to him is just one more industrial mishap in the factory, of the sort he has a right to consider exclusively covered by the compensation system" (2A A. Larson, Workmen's Compensation sec. 68.21 (1976); accord, *Jablonski v. Multack* (1978), 63 Ill. App. 3d 908.) Plaintiff alleges, however, that the company and its officers in this case intimidated him from receiving medical care by the posting of notices and the promulgation of rules and regulations requiring an injured employee to obtain permission from the company or its agents before they would pay for medical benefits provided by noncompany medical facilities. This type of notice appears to be a reasonable policy implementing section 8(a) of the Act as it was in force at the time of this incident:

"(a) The employer shall provide the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter, limited, however, to that which is reasonably required to cure or relieve from the effects of the accidental injury.

The employee may elect to secure his own physician, surgeon and hospital services at his own expense." (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(a).)

In the absence of a demonstration of employer impropriety on this score, these notices cannot be a basis for imposing liability on an employer otherwise innocent. Therefore, whether or not the Act bars this action, the reasoning of Professor Larson and the *Jablonski* decision would persuade us that since the employer did not direct, encourage or commit an intentional tort, neither the employer nor its officers should be forced to defend this suit.

The ambiguity caused by the term "accidental," however, remains in considering defendant Stogner. Larson suggests that an intentional tortfeasor should not be able

to shield his liability with the exclusivity provisions of a compensation statute premised on insuring accidental injuries (accord, *Griffin v. George's, Inc.* (1979), 267 Ark. 91, 96-97, 589 S.W.2d 24, 27; *Finch v. Swingly* (1973), 42 App. Div. 2d 1035, 348 N.Y.S.2d 266; *Readinger v. Gottschall* (1963), 201 Pa. Super 134, 191 A.2d 694; *Stewart v. McLellan's Stores Co.* (1940), 194 S.C. 50, 9 S.E.2d 35), but that if the injured party receives compensation pursuant to the act, he or she should not be heard to subsequently allege their intentional nature. (2A A. Larson, Workmen's Compensation secs. 68.12 n.9; 67.22 (1976). Accord, *Porter v. Downing* (Tex. Civ. App. 1979), 578 S.W.2d 460; *Legault v. Brown* (1954), 283 App. Div. 303, 127 N.Y.S.2d 601; *Burgess v. Tryde Manufacturing Co.* (1960), 20 Misc. 2d 875, 195 N.Y.S.2d 519; *Jones v. Jeffreys* (Tex. Civ. App. 1952), 244 S.W.2d 924.) Our appellate court, in *Jablonski v. Multack* (1978), 63 Ill. App. 3d 908, has concluded that the law's paramount interest is to avoid shielding from liability one who intends to do harm and, further, that the legislature could not be presumed to have intended to permit an intentional tortfeasor to shift his liability to a fund paid for with premiums collected from innocent employers. The court, consequently, held that neither section 5(a) nor section 11 should bar a common law suit against an intentional tortfeasor. Moreover, the court suggested that such action could be brought after compensation under the Act was awarded. Recognizing that such a result could lead to a double recovery for the injured plaintiff, the court held that any common law recovery be subject to the crediting procedures set forth in section 5(b) (Ill. Rev. Stat. 1973, ch. 48, par. 138.5(b)). *Jablonski v. Multack* (1978), 63 Ill. App. 3d 908, 913 n.1.

This court has considered the exclusivity provisions of the Act three times. In *Rylander v. Chicago Short Line Ry. Co.* (1959), 17 Ill. 2d 618, 628, this court held that

"the Workmen's Compensation Act precludes a common-law action for damages by an employee under the act against a co-employee based on the latter's negligence during the course of their employment. That result follows from the basic purpose of workmen's compensation to place the cost of industrial accidents upon the industry. That purpose would be blunted if the cost of those accidents was shifted from one employee to another within the industry. So far as persons within the industry are concerned, the Workmen's Compensation Act eliminated fault as a basis of liability." (Accord, *Chmelik v. Vana* (1964), 31 Ill. 2d 272.) Similarly, in *Sjostrom v. Sproule* (1965), 33 Ill. 2d 40, 43, this court held that since a car accident injuring an employee passenger in a vehicle driven by a fellow employee while in the line of duty was compensable under the Act, no common law action could be brought. This resulted regardless of proof of wilful or wanton negligence, a necessary predicate for an automobile guest to impose liability upon a host driver.

Thus we have never considered whether a suit could be brought against a coemployee for civil damages for an intentional tort arising out of and in the course of employment. It is not necessary that we address that question here, for we deem that where an employee injured by a coemployee has collected compensation on the basis that his injuries were compensable under the Act, the injured employee cannot then allege that those injuries fall outside the Act's provisions. We base this conclusion not only upon a fear of double recovery (*Schwartz v. City of Chicago* (1974), 21 Ill. App. 3d 84, 94), but also upon our desire to prevent the proliferation of litigation. (See *Adams v. Pearson* (1952), 411 Ill. 431, 436-37.) Since this plaintiff has collected compensation pursuant to an agreement executed in lieu of a claim and approved by the Industrial Commission, giving that settlement the status of an award (*Dyer v. Industrial Com.* (1936), 364

Ill. 161, 163, *Ahlers v. Sears Roebuck Co.* (1978), 73 Ill. 2d 259, 265), he is now precluded from suing for civil damages.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Judgment affirmed.*