THOMAS L. FREGEAU *et al.*, Plaintiffs-Appellants, *v.* GLOVER
GILLESPIE, Defendant-Appellee.

Third District    No. 81-508

Opinion filed May 12, 1982.

STOUDER, J., dissenting.

Christopher W. Bohlen, of Blanke, Norden, Barmann & Bohlen, and William
O. Schmidt, both of Kankakee, for appellants.

Adrienne W. Albrecht, of Nutting, Thacker, Sacks, Ruch & Albrecht, of
Kankakee, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

In this action, the plaintiffs Thomas Fregeau and his wife, Patricia,
seek damages for injuries caused by the intentional bludgeoning of
Thomas Fregeau by Glover Gillespie. The Fregeaus appeal from a sum-
mary judgment in favor of defendant entered by the circuit court of
Kankakee County.

The injury to plaintiff occurred at work on February 18, 1979, when
Gillespie, a co-employee, intentionally struck Fregeau on the head with a
large wrench. Following his injury, Fregeau applied for benefits pursuant
to the Workers' Compensation Act of Illinois. Fregeau received payment
of medical expenses and disability payments for the two-year period
while he was unable to work due to extensive surgery and recuperation.

On March 6, 1979, Thomas Fregeau filed a complaint against
Gillespie seeking punitive and compensatory damages for the injuries
sustained as a result of the intentional wrench assault. His wife, Patricia

Fregeau, sought damages for loss of consortium. The Fregeaus are not claiming a common law action against the employer and they acknowledge the employer's right of reimbursement from any judgment or settlement with Gillespie.

In his motion for summary judgment Gillespie claimed that Fregeau's acceptance of medical and disability payments under the Workers' Compensation Act precluded Fregeau from pursuing his common law action against Gillespie. The trial court agreed and granted defendant's motion. From this order, the plaintiffs appeal.

On appeal, the plaintiffs Fregeau assert that a party who intentionally injures a co-employee should not be allowed to avoid liability merely because the injured party collected benefits under the Workers' Compensation Act.

Defendant Gillespie, on the other hand, argues that the Workers' Compensation Act provides the exclusive remedy for accidental injuries sustained by an employee. Gillespie asserts that while an employee may sue his employer or fellow employee for intentional torts, once an employee has asserted the accidental nature of his injury by claiming Workers' Compensation benefits, he is foreclosed from claiming the injury was intentional and outside of the exclusivity provision of the Workers' Compensation Act. According to Gillespie, an injury is either accidental or it is not. If the injury is accidental the employee is entitled to Workers' Compensation benefits. If the injury is not accidental, then the employee may not claim Workers' Compensation benefits but he may pursue his common law remedies. Thus, Gillespie concludes, since Fregeau claimed and received the Workers' Compensation benefits, his injury must have been accidental and Fregeau is barred from suing the co-employee who injured him. We disagree.

Although the Workers' Compensation Act provides compensation for accidental industrial injury, the term "accidental" is not defined within the statute. It has been stated that its meaning cannot be determined from any definition found in the dictionaries (*Matthiessen & Hegeler Zinc Co. v. Industrial Board* (1918), 284 Ill. 378), and that it is not a technical legal term but encompasses anything that happens without design or event which is unforeseen by the person to whom it happens. (*E. Baggot Co. v. Industrial Com.* (1919), 290 Ill. 530.) However, it has been recently held that injury is accidental within the meaning of the Act "when it is traceable to a definite time, place and cause and occurs in the course of employment unexpectedly and without affirmative act or design of the employee." *International Harvester Co. v. Industrial Com.* (1973), 56 Ill. 2d 84, 89.

Thus, injuries sustained by an employee as a result of an unprovoked and unjustifiable assault by a fellow worker in the course of employment

have been held to be compensable as accidental injuries within the meaning of that term as used in the Act, where the assault stems from a quarrel arising out of the work or duties being performed by the employees. (*Pekin Cooperage Co. v. Industrial Com.* (1918), 285 Ill. 31. See also *McGrew v. Consolidated Freightways, Inc.* (1963), 141 Mont. 324, 377 P.2d 350.) These cases treat the injuring incident as an "accident" on the theory that it was unexpected or unusual or unprovoked from the standpoint of the employee. Thus, harm that is intentionally and wilfully inflicted may, in this special case of legal definition, be characterized as "accidental" for purposes of enabling the injured employee to receive benefits under the Workers' Compensation Act. Consequently, in a fictional legal sense, an injury may be both intentional and accidental.

Such is the dual character of the injury under scrutiny in the instant case. Benefits under the Workers' Compensation Act were properly paid as the injury was incurred in the course of employment unexpectedly and without provocation by Fregeau. Admittedly, such relief would be the exclusive remedy if the injuries were accidental in fact and were thus negligently or carelessly inflicted (as opposed to intentionally inflicted) by the injuring employee, Gillespie. *Rylander v. Chicago Short Line Ry. Co.* (1959), 17 Ill. 2d 618.

The aim of the Workers' Compensation Act is to provide compensation that is prompt, reasonable and certain to employees who are injured during the course of their employment. The Act relieves the employee of the necessity of proving fault on the part of another and freedom from contributory negligence for himself. Industrial accidents are thus absorbed into the overall cost of doing business and are reflected in the price of the product or service that is passed on to the consuming public. By the assurance of a recovery and the limitation of the liability, the Act is considered to be of benefit to employers, employees and the consuming public. No benefit can be gleaned, however, from shielding either employers or co-employees from the consequences of assaults and batteries, wilful tortious acts. The reverse is true. Assaults and batteries, whether or not occurring at work, are contrary to peace and domestic tranquility. It is the public policy of the law to discourage such attacks and to make culprits responsible both criminally and civilly and to expose such wrongdoers to punitive damages.

It is one thing to indulge in a legal fiction to characterize a battery as an "accident" so as to entitle an injured employee to recover under the Workers' Compensation Act. It is quite another thing to say, however, that this legal fiction should protect the tortious wrongdoer from the consequences of his wilful battery. Proposition one does not inexorably lead to proposition two. The allowance of such secondary recovery is of benefit to all but the wrongdoer. And he is not deserving of benefit. The

employer is benefitted because he may recoup benefits paid from the sum recovered against the wrongdoer. The injured party benefits because he can recover more than the limits of the Workers' Compensation Act. The public benefits because assaults and batteries are thereby discouraged. The consumers of the product or service are unaffected since the passing on of costs to the wrongdoer is not absorbed in the price of the product or service. Only the wrongdoer pays. He is held accountable for his conduct.

Where the injury is the result of intentional or nonaccidental conduct of a co-employee, such intentional misconduct should remove the tortfeasor employee from the protective shield of the Workers' Compensation Act. The accidental nature of the injury to the injured employee enables him to recover benefits under the Act. The tortfeasor employee, however, is left standing much as any other tortfeasor. The statutory scheme permits relief under the Act to the injured employee because it happened in the course of his employment. He may also seek recovery from the wilful tortfeasor, the person actually responsible for his injuries, with the employer given the right of a set-off or reimbursement of amounts paid under the Act to his injured employee. Ill. Rev. Stat. 1979, ch. 48, par. 138.5(b).

We believe this only just. Public policy requires that the law avoid shielding one who does intentional harm. Why should a person escape liability merely because he does his evil deeds at work? It is meretricious to suggest that innocent employers and equally innocent consumers foot the bill for persons who bludgeon fellow workers at their work station. For the true industrial accident, it makes good sense to dispose of the case solely under the Workers' Compensation Act. The opposite is true, however, where the industrial "accident" is the result of an intentional battery by a co-employee. To hold otherwise would be detrimental to employees as well as employers and the general public. It would remove all civil deterrence against intentional batteries committed at work. Indeed, it would invite such conduct.

Courts have divided on this issue. (See Annot., 21 A.L.R.3d 845, 880-81, sec. 11 (1968 & Supp. 1980).) For the most part, the nature of the alleged intentional conduct, frequently mere negligence, and variance in the jurisdictions' statutory provisions accounts for the diversity of their results.

States with statutory provisions similar to our own have considered situations similar to the instant case. The following States have concluded that the statutory compensation remedy should not be the exclusive remedy when an employee commits an intentional deliberate assault and battery upon a fellow worker: Utah (*Bryan v. Utah International* (Utah 1975), 533 P.2d 892); Tennessee (*Williams v. Smith* (Tenn. 1968), 435

S.W.2d 808); Louisiana law construed (*Tedder v. F.M.C. Corp.* (5th Cir. 1979), 590 F.2d 115); Alaska (*Eliott v. Brown* (Alas. 1977), 569 P.2d 1323); New York (*Mazarredo v. Levine* (1948), 274 App. Div. 122, 80 N.Y.S.2d 237.) On similar facts and statutory provisions Ohio (*Gillman v. Ross* (1971), 30 Ohio Misc. 34, 277 N.E.2d 256) finds contrary.

The defendant claims that our supreme court's recent decision in *Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, supports his position that by accepting Workers' Compensation benefits Fregeau has elected his remedy and may not now sue for civil damages. We reach our decision in the instant case mindful of *Collier*. We do not believe the principles espoused by the defendant Gillespie are as broadly endorsed by the *Collier* court as he suggests. Moreover, the instant battery is quite distinct from the facts presented in *Collier*.

In *Collier*, the plaintiff was stricken with symptoms of impending cardiac arrest while at work and was given inadequate treatment by defendant Stogner, a nurse or medical attendant employed by the defendant employer, Wagner Castings Co. Defendant Stogner apparently believed that the plaintiff Collier was suffering from indigestion. A co-worker subsequently called plaintiff's wife and informed her of the situation. With her son, she drove 40 miles to remove the plaintiff to a hospital where he suffered three episodes of cardiac arrest later that evening.

Collier brought suit against the employer as well as the nurse employee, Stogner. In count I Collier alleged "outrageous conduct" and sought compensation from both his employer and Stogner for severe emotional distress. No battery was claimed.

With regard to the employer, the court ultimately concluded that "* * * since the employer did not direct, encourage or commit an intentional tort, neither the employer nor its officers should be forced to defend this suit." With regard to the defendant co-employee Stogner the court decided that "since the employer injured by a co-employee has collected compensation on the basis that his injuries were compensable under the Act, the injured employee cannot then allege that those injuries fall outside the Act's provision." The court based their conclusion on fear of double recovery and their desire to prevent the proliferation of litigation.

We share the same concerns and find the result reached in the instant case avoids both pitfalls. In permitting the Fregeaus to sue Gillespie for injuries received by his assault upon Thomas Fregeau, we are not permitting double recovery. Any judgment or settlement obtained from Gillespie will be subject to the employer's right of reimbursement as provided in the Workers' Compensation Act. Ill. Rev. Stat. 1977, ch. 48, par. 138.5(b).

Furthermore, our result will discourage intentional employee mis-

conduct ultimately reducing not only litigation but also the number of claims filed with the Industrial Commission.

In *Collier*, the court stated that for the plaintiff to escape the exclusivity provision of the Workers' Compensation Act, the plaintiff would have to prove *either* that the injury (1) was not accidental; (2) did not arise from his or her employment; (3) was not received during the course of employment; or (4) was noncompensable under the Act.

Fregeau escapes the exclusivity provision because, unlike the conduct alleged in *Collier*, Fregeau's bludgeoning was unequivocally intentional and nonaccidental while still compensable under the Workers' Compensation Act. Accordingly, we reverse the order of the Kankakee County circuit court.

Reversed.

BARRY, P. J., concurs.

JUSTICE STOUDER, dissenting:
I respectfully disagree with the opinion of my colleagues. I would affirm the judgment of the trial court since I believe the judgment in favor of the defendant was proper.

In my opinion the recent case of *Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 408 N.E.2d 198, is dispositive of the issues raised and considered on this appeal. Neither the facts nor the legal reasoning of *Collier* can be distinguished from those existing or applicable to the instant case and accordingly, I think the same result is required.

*Collier* covered the same ground covered by my colleagues as well as that included in *Jablonski v. Multack* (1978), 63 Ill. App. 3d 908, 380 N.E.2d 924. The basic premise is firmly established that an injury to an employee may be accidental even though intentionally inflicted by someone else and will be compensable under the Workers' Compensation Act if occurring during the course of employment and if a risk of the employment. *Collier* also holds that the compensation provisions of the Workers' Compensation Act are not the exclusive remedy of an injured employee where a common law action based on the intentional tort of an employer or fellow employee is involved. However, *Collier* further holds that where the injured employee has elected to claim benefits under the Workers' Compensation Act, he is barred from any common law action based on intentional tort. In other words, while the provisions of the compensation act are not exclusive, the doctrine of election of remedies is applicable and once Workers' Compensation benefits are claimed and accepted no other action by the injured employee is permissible.

In *Collier*, the plaintiff accepted an award from his employer. Likewise, in the instant case, the plaintiff sought and has received substantial benefits from his employer under the Workers' Compensation Act.

In *Collier*, the court accepts as true the allegations of counts one and four of the complaint charging intentional torts but nevertheless concludes that because plaintiff had accepted a compensation award the actions were barred even though intentional torts were alleged. The majority has not distinguished the facts in the *Collier* case from those in the instant case and its only reason for not following the teaching of *Collier* is the suggestion that perhaps the court in *Collier* was too concerned with double recovery, a concern which is at most fleeting.

By adopting the rule which it has in *Collier*, the court has prevented employer and employee from insulating themselves from the results of their intentional torts if this is the course of action which the injured employee elects to follow. Even if the injured employee elects the compensation route, the intentional tortfeasor may be subject to criminal penalties, both incarceration and monetary. Thus a wrongdoer need not escape scot-free as is somehow suggested to be the consequence of denying the injured employee his right of action for an intentional tort under all circumstances.