ACCOUNT SERVICES CORPORATION *et al.*, Plaintiffs-Appellants, v. DAKCS SOFTWARE SERVICES, INC., *et al.*, Defendants-Appellees.

First District (4th Division) No. 1—89—0819

Opinion filed December 27, 1990.

Daniel V. Kinsella and Doyle C. Valley, both of Hough, Weatherhead & Kinsella, of Chicago, for appellants.

John Clarke & Associates, Ltd., of Arlington Heights (George Hessberger, of counsel), for appellee DAKCS Software Services, Inc.

Richard F. Zehnle and Christopher A. Nichols, both of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellee Systems Associates, Inc.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs, Account Services Corporation (ASC), Constance Firm and Richard Keegan, appeal from an order of the circuit court that dismissed counts I and II of their second amended complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). Under these counts, plaintiffs sought rescission and damages from defendants, DAKCS Software Services, Inc. (DAKCS), John Doramus, Systems Associates, Inc. (SAI), Automated Recovery Systems, Inc. (ARS), Dwight Foster and Kent Green, Cash Management Services, Inc. (CMSI), and Specialized Management Services, Inc. (SMSI). These counts were brought pursuant to the Franchise Disclosure Act (Ill. Rev. Stat. 1985, ch. 121½, par. 701 *et seq.*). The trial court found that the plaintiffs had failed to state a cause of action under the Franchise Disclosure Act.

Plaintiffs present the following issues for our review: (1) whether the trial court erred by failing to find that plaintiffs sufficiently alleged that defendants ARS and SAI may be liable under the Franchise Disclosure Act; (2) whether the trial court erred by failing to find that plaintiffs sufficiently alleged that they were granted the right to engage in the business of offering or selling services under a marketing plan or system prescribed or suggested in substantial part by defendants; (3) whether the trial court erred by failing to find that plaintiffs sufficiently alleged that the operation of their business is substantially associated with defendants' trade name, advertising or other commercial symbol designating defendants or their affiliates; and (4) whether the trial court erred by failing to find that plaintiffs sufficiently alleged that they paid a franchise fee within the meaning of the Franchise Disclosure Act.

We affirm.

Plaintiffs were engaged in the business of providing debt collection services to clients. Defendant DAKCS is in the business of selling computer hardware and software systems designed for debt collection. Defendant SAI designs and sells financial software systems in-

cluding those designed for debt collection. Defendant ARS develops and sells bad debt collection software specifically designed for hospitals and the health care industry. Defendant CMSI is a wholly owned subsidiary of SAI. Defendant SMSI is a wholly owned subsidiary of DAKCS. Plaintiffs allege that defendants Doramus, Foster and Green were involved with ARS, DAKCS or SMSI as employees, agents or officers.

In plaintiffs' second amended complaint, it is alleged that in 1986 defendants DAKCS, SAI and ARS developed a computer system and marketing plan for the collection of debts. Pursuant to the plan, hospitals would turn over their uncollected debts to ARS, which would in turn assign these accounts to various collection agencies. SAI, DAKCS and ARS presented this debt collection proposal to hospitals through a general partnership.

Plaintiffs alleged that in April 1986, ASC was established to render debt collection services for clients. In May 1986, plaintiffs considered purchasing computer software and hardware from DAKCS to facilitate them in their debt collection services. Doramus, an alleged agent and employee of DAKCS, informed plaintiffs that DAKCS and ARS had developed a system to provide for the nationwide coordination of collection services for client hospitals. Collections were to be handled on a regional basis by firms acting as agents for ARS. Plaintiffs were told that there was no regional agent in the Chicago area.

Plaintiffs further alleged that ARS advertised in The Collector Magazine that 265 hospitals were already being serviced by defendants' debt collection services. Plaintiffs note that the advertisement also appealed to collection agencies to invest in the ARS system.

In order to become a member of ARS, plaintiffs allege that they had to purchase or lease DAKCS hardware and software equipment. After becoming a member of ARS, plaintiffs allege that they were told they would receive $3 million of collections on a monthly basis. Doramus allegedly estimated that pre-tax profits from these collections would be in excess of $375,000.

Plaintiffs then entered into a "Sales Agreement" with DAKCS to purchase the equipment. Plaintiffs alleged that pursuant to the agreement to purchase equipment, they initially paid $18,000. They were obligated to pay an additional amount in excess of $55,000 at a later date. Plaintiffs also signed an "Agency Agreement" with ARS in order to become participating collection agents. Plaintiffs allege that defendants failed to assign any accounts to them, as promised. As a result of this alleged breach, plaintiffs complained that they suffered damages and lost profits in excess of $375,000.

Plaintiffs filed a complaint against defendants on April 5, 1989, which was subsequently amended. In counts I and II of their second amended complaint, plaintiffs alleged violations of the Franchise Disclosure Act. At this juncture, we note that the Franchise Disclosure Act (Ill. Rev. Stat. 1985, ch. 121½, par. 701 *et seq.*) had been repealed and replaced by the Franchise Disclosure Act of 1987 (Ill. Rev. Stat. 1987, ch. 121½, par. 1701 *et seq.*). Both versions of the statute are substantially the same. For our purposes, the only notable difference is the required franchise fee amount. The repealed statute required that a $100 fee be paid. The current Act requires that a fee in the amount of $500 be paid by the franchisee.

The trial court did not specify which version of the statute was to apply to the instant case, and we believe it is of no consequence here, since plaintiffs have not met the required definitional elements of a franchise as stated in either version. As plaintiffs initially filed their complaint after the new statute was in effect, we will refer to the Franchise Disclosure Act of 1987 (hereinafter the Act) for purposes of this appeal.

The trial court dismissed these counts pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) for failure to state a cause of action under the Act. The trial court found that the parties had not entered into a franchise agreement as defined in the Act. It is from the dismissal of these counts that plaintiffs appeal. We also note that there are other common law counts that are still pending before the trial court.

■ In considering a motion to dismiss for failure to state a cause of action, all well-pleaded facts are to be taken as true. (*Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 232.) Plaintiffs are entitled to all reasonable inferences which can be drawn from the facts. (*Wolcowicz v. Intercraft Industries Corp.* (1985), 133 Ill. App. 3d 157, 160.) Conclusions of law, however, which may be drawn from such facts may not be admitted. (*Carlson v. Moline Board of Education, School District No. 40* (1984), 124 Ill. App. 3d 967, 970.) An appeal from a dismissal for failure to state a cause action "preserves for review only a question of law as to the complaint's legal sufficiency." *Teter v. Clemens* (1985), 131 Ill. App. 3d 434, 436.

The four issues that plaintiffs present for our consideration constitute the elements of a franchise as defined in the Act. In order to come within the purview of the Act, plaintiffs acknowledge that they must allege the existence of a franchise. "Franchise" is defined as follows:

" 'Franchise' means a contract or agreement, either ex-

pressed or implied, whether oral or written, between two or more persons by which:

(a) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services, under a marketing plan or system prescribed or suggested in substantial part by a franchisor; and

(b) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and

(c) the person granted the right to engage in such business is required to pay, directly or indirectly, a franchise fee of $500 or more." Ill. Rev. Stat. 1987, ch. 121½, pars. 1703(a) through (c).

■ At the outset, we note that although plaintiffs entered into two contracts or agreements with defendants, the agreements were not denoted as "franchise" agreements. One agreement was a "Sales Agreement" for the purchase of equipment; the other was entitled "Agency Agreement." We do not find, contrary to plaintiffs' contention, that these agreements, when read in conjunction, would constitute a franchise. Furthermore, upon review of the record, we do not find that defendants represented to plaintiffs at any time that they were franchisors or that plaintiffs would be entering into a franchise agreement.

In *Vitkauskas v. State Farm Mutual Automobile Insurance Co.* (1987), 157 Ill. App. 3d 317, the court was presented with a situation that is analogous to the instant case. In *Vitkauskas*, the plaintiff alleged that defendant insurance company had violated the Act. The plaintiff had entered into oral and written agreements with defendant to become one of defendant's insurance agents. The court held that the relationship between the parties did not fall within the purview of the Act. The nature of the relationship between the parties was that of employer-employee. The court found that although it was not bound by "labels" in describing the relationship between the parties, "[u]nder the Act an employee and a franchisee are not synonymous." *Vitkauskas*, 157 Ill. App. 3d at 324.

"Businesses such as White Hen, Duro-Clean, McDonald's, Hardees, Holiday Inn, etc., are relatively new and have created a new business relationship, a different relationship from that of employer and employee, which has been *in esse* for centuries. It is impossible to conclude that the [Act] was intended to

regulate the employer and employee relationship." *Vitkauskas*, 157 Ill. App. 3d at 325.

■ Similarly, in the instant case, we do not find, after reviewing the "Agency Agreement," that the "agency" as set forth in the agreement is synonymous with "franchise" as defined in the Act. Moreover, the fact that plaintiffs also signed a "Sales Agreement" for the purchase of equipment would not make this arrangement a franchise. (Ill. Rev. Stat. 1987, ch. 121½, par. 1703(14).) Even if the agreements were labeled as "franchise agreements," we do not find that the parties' arrangement constituted a franchise as defined in the Act.

The first requirement of the definition of a franchise is that plaintiffs must have been granted the right to offer, sell, or distribute goods or services, under a marketing plan provided or suggested in "substantial part" by defendants. Ill. Rev. Stat. 1987, ch. 121½, par. 1703(a).

> " 'Marketing plan or system' means a plan or system relating to some aspect of the conduct of a party to a contract in conducting business, including but not limited to (a) specification of price, or special pricing systems or discount plans, (b) use of particular sales or display equipment or merchandising devices, (c) use of specific sales techniques, (d) use of advertising or promotional materials or cooperation in advertising efforts ***."

Ill. Rev. Stat. 1987, ch. 121½, par. 1703(18).

In the instant case, plaintiffs alleged that "[t]he defendants prepared a business and marketing plan. *** [U]nder the plan client hospitals would automatically turn over their bad debts to the ARS System. The ARS System would then assign the bad debts for collection to collection agencies." After collecting the outstanding debt, the chosen agency would remit the collected monies to ARS. The monies would then be divided among ARS, the hospital and the chosen agency.

We are not persuaded that plaintiffs have properly alleged the existence of a "marketing plan" or "system" as defined in the Act. The "plan" that plaintiffs described pertains more to defendants' structure. In fact, plaintiffs' description of this so-called "plan" in their second amended complaint is under the heading "The Structure of Defendants." The described "plan" does not assist plaintiffs in the affirmative act of their selling or their offering of debt collection services. As defendants note, they did not give plaintiffs advice as to how to sell their services.

■ Even assuming, *arguendo*, that plaintiffs were granted the

right to "offer" or "sell" defendants' services pursuant to a marketing plan provided by defendants, we are not persuaded that plaintiffs meet the second statutory criterion.

Section 3(b) of the Act requires that the franchisee must become substantially associated with franchisor's trade symbol, advertising or other commercial symbol. (Ill. Rev. Stat. 1987, ch. 121½, par. 1703(b).) Plaintiffs did not allege that they could or did use defendants' trade symbol; rather, plaintiffs alleged that "[a]gents who participated in the system could *** become associated with the ARS name and advertising." (Emphasis added.)

This allegation indicates that the "agents" have an option as to whether or not to become associated with the franchisor's name or advertising. We do not interpret this section as necessarily providing such an option. The section states that "the operation of the franchisee's business *** is substantially associated with the franchisor's *** advertising or other commercial symbol." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 121½, par. 1703(b).) Plaintiffs' allegations, therefore, arguably do not fall within the Act.

■ Later in the second amended complaint, plaintiffs allege that "[t]he operation of plaintiffs' business was to be and was in fact substantially associated with the ARS-Partnership name and advertising." We, however, find this allegation to be conclusory. Conclusory statements unsupported by sufficient allegations will not withstand a motion to dismiss. (*Carlson v. Moline Board of Education v. School District No. 40* (1984), 124 Ill. App. 3d 967, 970.) This allegation also fails with respect to this criterion of the section.

■■ ■ Even if plaintiffs' allegations were construed so as to meet the second criterion of the section, we are not persuaded that plaintiffs have met the third criterion of the section which requires that plaintiffs pay a franchise fee. (Ill. Rev. Stat. 1987, ch. 121½, par. 1703(c).) "A payment alleged to be a franchise fee must fit precisely within the statutory definition." (*Vitkauskas v. State Farm Mutual Automobile Insurance Co.* (1987), 157 Ill. App. 3d 317, 326.) A franchise fee is defined as "any fee or charge that a franchisee is required to pay *** for the right to enter into a business or sell, resell, or distribute *** services." Ill. Rev. Stat. 1987, ch. 121½, par. 1703(14).

■ Plaintiffs allege that the sum of $18,000 they were required to pay for the equipment constitutes the franchise fee. However, upon review of the standard "Sales Agreement," which reflects the terms of the leasing or sale of the equipment, we find no mention that the monies paid were to be considered a franchise fee. The monies paid were simply for the lease or purchase of the computer equipment.

Plaintiffs also allege that they were required to pay a franchise fee when they agreed to remit collected monies to ARS. These remissions, however, were payments for services rendered pursuant to the "Agency Agreement." As defendants argue, there was no obligation to pay these remissions if plaintiffs had not made any debt collections. We are not persuaded that these nonobligatory remissions should be construed as the mandatory franchise fees set forth in the Act. Plaintiffs' allegations, therefore, do not meet the franchise fee requirement.

We do not find that the trial court erred in dismissing counts I and II of plaintiffs' second amended complaint.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

McMORROW, P.J., and LINN, J., concur.