CONNIE TOOTHMAN *et al.*, Plaintiffs-Appellees, v. HARDEE'S FOOD SYSTEMS, INC., *et al.*, Defendants-Appellants.

Fifth District    No. 5—97—1034

Opinion filed April 20, 1999.—Rehearing denied June 9, 1999.

Myron A. Hanna and Henry F. Luepke, both of The Stolar Partnership, of Belleville, for appellant Hardee's Food Systems, Inc.

Paul D. Giamanco, of Paul D. Giamanco & Associates, of Mt. Vernon, for appellant Judy Rochford and Kim Thompson.

Donald V. Ferrell and Thomas J. Foster, both of Jelliffe, Ferrell, Morris, Doerge & Foster, of Harrisburg, for appellees.

JUSTICE HOPKINS delivered the opinion of the court:

Defendants, Hardee's Food Systems, Inc. (Hardee's), Judy Rochford, and Kim Thompson, appeal from the trial court's entry of judgments on jury verdicts in favor of plaintiffs, Connie Toothman, Gennifer Dismuke, Nena Sherrod, and Krista Boardman. The action arises out of a strip search of plaintiffs, employees of the Harrisburg Hardee's, conducted by Judy and Kim, managers of the Harrisburg Hardee's. The issues we decide are (1) whether plaintiffs' claims of false imprisonment, assault, and battery are barred as to Hardee's by the exclusivity provisions of the Workers' Compensation Act (the Act) (820 ILCS 305/1 *et seq.* (West 1996)), (2) whether the trial court erred when it instructed the jury regarding the elements of false imprisonment, assault, and battery, (3) whether the jury's awards of compensatory damages were against the manifest weight of the evidence, (4) whether the trial court erred by allowing the jury to consider the issue of punitive damages as to Hardee's, and (5) whether the amount of punitive damages was excessive as to any of the defendants. We affirm.

## BACKGROUND

On December 2, 1992, all four plaintiffs worked at the Hardee's restaurant in Harrisburg, Illinois. Plaintiffs were crew leaders with access to the safe where the petty cash was secured. At about 2 p.m., Kim, the assistant manager, counted the money in the safe as part of her regular duties and found that $50 was missing. Kim reported the missing money to Judy, the store's general manager. Judy also found $50 missing.

In an attempt to find the missing money, Judy and Kim searched each plaintiff. Each plaintiff testified that she was taken individually into a small, windowless, locked room and was ordered to remove all clothing, except for her underwear. Judy and Kim testified that they only requested plaintiffs to empty their pockets and remove their shoes and socks. Judy and Kim did not find the money on any of the plaintiffs, and they later discovered that there was a bank error and that no money was actually missing from the store safe.

On June 6, 1994, plaintiffs filed their complaint for false imprisonment and assault and battery, naming Hardee's, Kim, and Judy as defendants. None of the plaintiffs sought benefits under the Act. On July 25, 1994, Hardee's filed its answer and affirmative defenses, claiming that each plaintiff was contributorily at fault. On the same date, Hardee's filed a motion to dismiss, alleging the failure to state a cause of action.

On September 23, 1994, Hardee's filed a motion for leave to file an amended response to plaintiffs' complaint and an amended motion to dismiss, alleging that the Act provided the exclusive remedy for plaintiffs and that their action at common law was therefore barred. On November 7, 1994, the trial court denied the original motion to dismiss, filed on July 25, 1994, and granted Hardee's leave to file amended affirmative defenses.

On January 31, 1995, Hardee's filed amended affirmative defenses alleging as follows: (1) the Act provides plaintiffs' exclusive remedy, (2) plaintiffs failed to state a cause of action, and (3) the "conduct of Hardee's" was protected by the Criminal Code of 1961 (720 ILCS 5/16A—5 (West 1994)). On August 31, 1995, Hardee's filed a motion for summary judgment, alleging that the Act provided plaintiffs' exclusive remedy.

On September 19, 1995, plaintiffs filed a response to Hardee's motion for summary judgment, arguing that Hardee's gave Judy and Kim complete authority over the Harrisburg Hardee's, which made Judy and Kim either plaintiffs' employers or at least the alter egos of Hardee's. On September 27, 1995, the trial court denied Hardee's motion for summary judgment.

The jury trial began on August 21, 1997. Each plaintiff testified about the details of the strip search. Briefly stated, that evidence consisted of the following: Both Judy and Kim knew that bank errors had been responsible for money missing from the Harrisburg Hardee's prior to December 2, 1992, yet neither of them checked with the bank before insisting that their employees disrobe in front of them. Each plaintiff testified that neither Judy nor Kim asked her if she had the missing money or if she knew anything about it. Nena testified that

Judy told her that if she did not submit to the strip search in front of Judy and Kim, then the Harrisburg police would conduct the search, implying to Nena that if she did not allow the female managers to strip-search her, then male police officers would search her instead. Each plaintiff testified that Judy acted very angry before and during the search and that she was afraid that Judy would physically force her to disrobe if she did not do so herself.

Krista testified that she told Judy that her shift was over and that she needed to leave to pick up her child at daycare. Krista stated that Judy responded by picking up a thick folder, slamming it down on her desk, and screaming that she did not care where Krista had to go, because until the money was found, no one was going anywhere. Connie testified that the managers not only forced her to take off her outer clothing but also forced her to unsnap her bra and shake it out and to pull her underwear down around her knees. Krista testified that the managers forced her to strip down to her underwear, pull out her bra and shake it, pull out the crotch of her underwear and shake it, and then turn around and do the same from behind. Each plaintiff testified that neither Judy nor Kim nor anyone else from Hardee's ever apologized.

We will set forth the remainder of the evidence adduced at trial in more detail as it pertains to the issues we decide. The jury returned verdicts in favor of plaintiffs and awarded each of them $25,000 in compensatory damages against all defendants, $200,000 in punitive damages against Hardee's, $375 in punitive damages against Judy, and $50 in punitive damages against Kim. The trial court entered judgments on the verdicts and denied defendants' posttrial motions. This appeal followed.

## ISSUES

### EXCLUSIVE APPLICATION OF THE WORKERS' COMPENSATION ACT

■ Hardee's argues that plaintiffs' claims are barred by the exclusivity provisions of the Act because plaintiffs' injuries were accidental, arose out of and were sustained during the course of their employment, and were compensable under the Act. The trial court found, as a matter of law, that the exclusivity provisions of the Act "are not applicable to this case" because plaintiffs' injuries are not compensable under the Act. Our review of the trial court's construction of the Act is *de novo*. See *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 452 (1997).

■ Section 5(a) of the Act provides as follows:

"No common law or statutory right to recover damages from the

employer \*\*\* or the agents or employees [of the employer] for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act \*\*\*." 820 ILCS 305/5(a) (West 1996).

Section 11 of the Act provides:

"The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer \*\*\* for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act \*\*\*." 820 ILCS 305/11 (West 1996).

■ The Illinois Supreme Court has determined that the only way an injured employee can sue for damages against his or her employer, other than by filing for compensation provided under the Act, is to allege one of the following: (1) the injury was not accidental, (2) the injury did not arise from his or her employment, (3) the injury was not received during the course of employment, or (4) the injury is not compensable under the Act. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463 (1990); *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237 (1980).

Hardee's argues that plaintiffs failed to show that their injuries fall under any of the above exceptions. Plaintiffs argue that we should affirm the trial court on its finding of noncompensability, because they did not seek or require any medical care after the incident nor did they miss any work. While we agree with the trial court's finding that, as a matter of law, plaintiffs' injuries are not compensable under the Act, we first discuss what we determine to be a stronger basis for our holding, that plaintiffs' injuries are not accidental under the Act.

■ In *Meerbrey*, the supreme court stated as follows:

"This court has determined that the term 'accidental' in the Act is not ' "a technical legal term but encompasses anything that happens without design or an event which is unforeseen by the person to whom it happens.' " [Citations.] Thus, injuries inflicted intentionally upon an employee by a co[ ]employee are 'accidental' within the meaning of the Act, since such injuries are unexpected and unforeseeable from the injured employee's point of view. [Citation.] Such injuries are also accidental from the employer's point of view, at least where the employer did not direct or expressly authorize the co[ ]employee to commit the assault. Because injuries intentionally inflicted by a co[ ]worker are accidental from the employer's point of view, the employer has a right to consider that the injured employee's sole remedy against the employer will be under the workers' compensation statute. \*\*\*

The exclusivity provisions will not bar a common law cause of action against an employer, however, for injuries which the employer or its alter ego intentionally inflicts upon the employee or which were commanded or expressly authorized by the employer. [Citations.] The rationale advanced in support of this rule is that the employer should not be permitted to assert that the injury was 'accidental,' and therefore under the exclusive provisions of the Act, when he himself committed the act." *Meerbrey*, 139 Ill. 2d at 463-64.

■ Thus, the decision in *Meerbrey* requires factual findings as to whether the employee's injuries were unexpected or unforeseeable from the injured employee's point of view and, if so, whether the intentional act was committed by the employer personally or by the alter ego of the employer/corporation or whether the employer commanded or expressly authorized the intentional tort. Hardee's argues that the trial court should have granted its motion for a directed verdict on this issue. The trial court cannot grant a motion for a directed verdict unless " 'all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.' " *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992), quoting *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967).

In the case at bar, each plaintiff testified that she expected Judy to conduct a strip search after the money was found missing. There was evidence that the search was not unexpected or unforeseeable from plaintiffs' point of view. The court was required to consider the evidence and the inferences to be drawn therefrom in the light most favorable to plaintiffs and was not allowed to pass upon the credibility of the witnesses or to decide what weight to assign their testimony, as these matters were strictly within the province of the jury. *Johnson v. National Super Markets, Inc.*, 257 Ill. App. 3d 1011, 1014 (1994).

■ We next consider the evidence presented on the issue of Hardee's involvement in the commission of the intentional torts. According to the rules set forth in *Meerbrey*, the trial court was justified in denying the motion for a directed verdict if there was evidence that (1) Hardee's itself committed the intentional torts, (2) Judy or Kim was the alter ego of Hardee's when she committed the intentional torts, or (3) Hardee's commanded or expressly authorized Judy or Kim to commit the intentional torts.

■ There is no evidence that Hardee's personally committed or expressly commanded either Judy or Kim to commit the intentional torts of false imprisonment, assault, or battery against plaintiffs. Thus, we are left with the question of whether there was any evidence

from which the jury could reasonably consider Judy or Kim to be the alter ego of Hardee's. Hardee's argues that plaintiffs have neither pled nor proved that Judy or Kim was acting as the alter ego of Hardee's at the time of the incident. Hardee's waived any error in the pleadings, however, when it answered plaintiffs' complaint. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54 (1994).

The evidence on this issue is as follows: In 1992, Judy had been the general manager of the Harrisburg Hardee's since 1984. As general manager, Judy's responsibilities included truck orders, equipment maintenance, scheduling, the hiring and termination of employees, shift control, inventory counts, training and development, cash control and in-store cash policy, and "anything and everything that pertains to the general upkeep and maintenance of the restaurant or anything to do with any persons employed by the restaurant." As general manager, Judy had the authority to fire, suspend, discipline, or promote each plaintiff. Judy was accountable for every aspect of the management and operation of the restaurant, whether she was physically present or not. Kim's responsibilities as assistant manager were the same as Judy's, but Kim was not accountable for the restaurant when she was not physically present.

Judy was ultimately responsible when money was missing. However, Hardee's claimed that she was also required to operate the restaurant under Hardee's prescribed practices and procedures, one of which required that when "company money and/or property is found missing, the first line manager [Judy] should contact [her] superior (District Manager, Departmental Vice President) *immediately*. If unable to contact superior, he/she should follow the chain of command upward until successful." (Emphasis in original.) This statement is found in a policy manual that Hardee's introduced into evidence, but Hardee's never elicited Judy's testimony identifying or even describing the policy manual. Judy testified that she tried to call the district manager and a human resources manager but could not reach either one. Instead of continuing to attempt to reach someone else higher up the corporate ladder, Judy initiated the search. The evidence is also clear that prior to the search, neither Judy nor Kim attempted to contact the restaurant's bank, even though money found missing in the past was the result of the bank's errors.

Judy testified as follows:

"A. I believe in going by the book, you know. There's [*sic*] rules, there's [*sic*] procedures and policies and I believe you should go by them.

Q. And on December 2, 1992, you didn't follow the book?

A. I didn't know there was a book to follow. I mean I was just going by my own knowledge."

Judy testified in response to additional questions about corporate policy that she "never read the policy" and that she was not aware of several additional matters that Hardee's claimed were corporate policy. Judy testified that prior to December 2, 1992, no one from Hardee's ever told her that she could not strip-search employees in order to locate money missing from the restaurant. According to Judy, missing money had been a serious problem at the Harrisburg Hardee's for about three months before December 2, 1992.

The trial court properly denied Hardee's motion for a directed verdict if there was any evidence, viewed in the light most favorable to plaintiffs, to show that Judy or Kim acted as Hardee's alter ego during the commission of the intentional torts against plaintiffs. We find that there was sufficient evidence that Judy was the alter ego of Hardee's to deny Hardee's motion for a directed verdict.

█ There are very few instructive cases in Illinois that consider what the term "alter ego" means when an employee sues her employer for an intentional tort. An employee of a corporation has been held to be the alter ego of the corporation when the intentional tortfeasor/ employee was both an officer and a general manager of the corporation. *Jablonski v. Multack*, 63 Ill. App. 3d 908 (1978). In *Sutton v. Overcash*, 251 Ill. App. 3d 737, 755 (1993), the court found that the defendant was clearly the alter ego of the corporation because he was a 50% shareholder of the corporation, he served as an officer of the corporation, and the corporation consisted only of the defendant and one other person. Thus, an employee can be considered the alter ego of a corporation by having authority to control the policies and procedures of the corporation as an officer, shareholder, or manager of the corporation.

Another factual setting in which an employee was found to be the alter ego of the employer is described in *Johnson v. Federal Reserve Bank*, 199 Ill. App. 3d 427 (1990), wherein the trial court granted the employer's motion to dismiss the plaintiff's complaint for intentional infliction of emotional distress on the ground that it was barred by the exclusivity provisions of the Act. *Johnson*, 199 Ill. App. 3d at 430. In *Johnson*, the plaintiff alleged that certain managerial employees were responsible for the plaintiff's injuries. *Johnson*, 199 Ill. App. 3d at 430. The appellate court reversed the dismissal, stating as follows:

"[C]ompensation under the Act excludes compensation through a common law claim, but the Act does not automatically bar common law claims against an employer.

Intentional torts *** fall outside the scope of the Act as they are not accidental and do not arise from conditions of employment. [Citation.] Further, intentional torts are not intended to be com-

pensable under the Act: '[T]he socially beneficial purpose of the workers' compensation law was not meant to permit a person who commits an intentional tort to use the compensation law as a shield against liability.' [Citation.] Thus, the Act does not bar common law actions for intentional torts where the injury was inflicted by the employer or a co[ ]employee acting as the alter ego of the employer. [Citations.] Here, Johnson [the plaintiff/employee] alleged intentional conduct by persons acting in their capacity as managers of the Bank, therefore as the alter ego of the Bank, and there is no indication that Johnson received compensation under the Act. Johnson's claim was not barred." *Johnson*, 199 Ill. App. 3d at 433-34.

In *Johnson*, the allegations in the complaint described "the nature and duration of the superiors' conduct" and supported the reasonable inference that the employer "knew of and allowed the conduct either with the purpose of inflicting severe emotional distress[ ] or *knowing that the conduct was substantially certain to result in* severe emotional distress." (Emphasis added.) *Johnson*, 199 Ill. App. 3d at 431. Thus, a second way in which a managerial employee is found to be the alter ego of her employer is through evidence that the manager was in a position of authority over other employees and the employer knew of or allowed the injurious conduct or knew there was a substantial likelihood that injurious conduct would occur.

The facts of the case at bar present a third scenario in which the jury could have determined that Judy was the alter ego of Hardee's, at least for that portion of Hardee's business conducted at its Harrisburg restaurant. The parties agree that Judy was personally responsible for all decisions made at the restaurant, whether she was physically present or not. Hardee's introduced evidence of a written procedure instructing managers in the event that money was found missing from a restaurant. However, Judy had never seen this written policy, and Hardee's did not present evidence that it ever allowed Judy an opportunity to review the policy manual. The thrust of this evidence, when viewed most favorably to plaintiffs, is that for eight years prior to this incident Judy was given complete control over and responsibility for the Harrisburg Hardee's without any direction from her corporate employer that she should do anything other than what she believed to be right under the circumstances. In other words, Hardee's made Judy its alter ego for conducting all business and dealing with all of the employees at the Harrisburg Hardee's.

Where the employer uses an alter ego/manager to conduct a particular portion of its business (here, the Harrisburg Hardee's restaurant) and gives that manager complete authority over the opera-

tion of that business but does not provide the manager with any instructions against committing intentional torts and allows the manager to use her own judgment in resolving all of the issues that occur in that business, then the employer has constructively authorized any and all of the actions of its manager and cannot shield itself from common law liability via the beneficial provisions of the Act. There is ample evidence in the record, if believed by the fact finder, to establish that Hardee's made no effort to prohibit Judy from conducting strip searches in locked offices. Moreover, Hardee's may have avoided this situation if it had merely provided Judy with an opportunity to review its corporate policies. Without providing her with at least that much direction, however, Hardee's cannot now hide behind that corporate policy and claim that it did not participate in these intentional torts.

■ We find that under the circumstances presented herein, Judy's manager status was the same as alter ego status for the Harrisburg Hardee's store. Since "the paramount purpose behind the intentional tort exception is to prevent persons who commit intentional torts from using the compensation law as a shield against liability" (*Fredericks v. Liberty Mutual Insurance Co.*, 255 Ill. App. 3d 1029, 1033 (1994)), we ought not allow that protection to be used as a cloak to shield Hardee's. Therefore, we affirm the trial court's denial of Hardee's motion for a directed verdict and its finding that plaintiffs are permitted to sue Hardee's at common law.

Next, we consider whether plaintiffs' injuries are compensable under the Act. According to plaintiffs, without any medical bills and without any missed work, no compensation is available to them under the Act, since only medical bills and temporary or permanent, partial or total disability are compensable under the Act (820 ILCS 305/8 (West 1996)). Hardee's responds that emotional injuries have been found to be compensable under the Act in several cases. See *Pathfinder Co. v. Industrial Comm'n*, 62 Ill. 2d 556, 563 (1976); *Richardson v. County of Cook*, 250 Ill. App. 3d 544, 548 (1993). Plaintiffs distinguish *Pathfinder* and the other cases Hardee's cites on the basis that all of them included medical bills or absence from work or both, in addition to the purely emotional suffering, which is all that exists in the case at bar.

Hardee's counters that even though plaintiffs do not have any medical bills or time off work or any disability as a result of this incident, the Act still bars their common law action against Hardee's because recoverability under the Act is not equivalent to compensability. Hardee's contends as follows: "If an injury is compensable, it remains so regardless of the course of treatment, if any, the employee

undergoes after the injury. Section [8] [of the Act] simply provides that, if an injured employee is to recover anything for her injury, her recovery will be limited generally to her medical bills, treatment costs[,] and lost wages."

Hardee's cautions us not to set a dangerous precedent that would give injured employees the "perverse incentive" to refuse to seek treatment for their workplace injuries and to continue to come to work despite disabling injuries, in the hope that they will obtain a greater monetary award by suing their employer at common law. Hardee's logic presumes that physically disabled employees will deny themselves temporary total disability payments, time off work, medical treatment for the disabling injuries, and any permanent disability payments guaranteed by the Act and that they will choose instead to sue in civil court with no guaranteed recovery. We do not believe that affirming the trial court will have such a result.

The Act gives employers the right to require employees to submit to medical examinations by practitioners of the employer's choice "for the purpose of determining the nature, extent[,] and probable duration of the injury received by the employee[ ] and for the purpose of ascertaining the amount of compensation which may be due the employee." 820 ILCS 305/12 (West 1996). If an employee has not filed for compensation and has not taken time off work, but the employer believes that the employee has been injured at work and is entitled to compensation under the Act as a result of that injury, then the employer can require the employee to submit to a medical examination to determine if any disability exists.

If the employee files a common law action against the employer instead of seeking benefits under the Act, as in the case at bar, the employer can seek a court order under civil discovery rules to compel the employee to submit to "a physical or mental examination by a physician" suggested by the employer. 166 Ill. 2d R. 215(a). Here, Hardee's pled an affirmative defense that plaintiffs were not allowed to sue Hardee's at common law because their exclusive remedy was under the Act, yet Hardee's did not seek to have plaintiffs examined to determine if their injuries were compensable under the Act.

Instead of using these civil discovery techniques, employers may choose to gamble that employees will lose their actions at common law. Similarly, employers who wish to avoid the expense of paying workers' compensation benefits may choose not to have the employee examined in accordance with the provisions of the Act, in the hopes that the employee will be barred from claiming workers' compensation benefits by failing to file a claim within the specified time period. Since employers can utilize such methods to discover employees who

are potential dangers to the workplace and who have compensable injuries under the Act, we see no reason to disallow plaintiffs' common law action on the basis that although they cannot recover for their injuries under the Act, those injuries are somehow still compensable. To the contrary, we find that since the Act provides no recovery under these circumstances, the injuries are, therefore, not compensable under the Act.

In *Pathfinder*, the supreme court decided that the employee's psychological injuries were compensable under the Act, stating, "[T]here is little to support a rule that allows an award for a claimant *** who is suffering from psychological disabilities caused by an often minor physical injury but denies an award to a claimant with a similar psychological disability brought about, as here, by a sudden, severe emotional shock and who fortuitously did not sustain any physical injury in his accident." *Pathfinder*, 62 Ill. 2d at 564-65.

The court in *Pathfinder* determined that the employee had sufficiently proved that her injuries were compensable under the Act through the introduction of hospital records showing that she was suffering from a nervous condition upon admission and that she received sedating drugs while hospitalized. The court concluded that these records provided the necessary evidence of the employee's objective symptoms or conditions of disability. *Pathfinder*, 62 Ill. 2d at 567. In contrast, in the case at bar, plaintiffs are unable to prove compensability under the Act because they have no medical or hospital bills and they did not take any time off work as a result of the incident.

Our decision on this issue is strengthened by the central purposes of the Act: to provide workers with financial protection when injured at work, to circumvent employee's problems with proving negligence or willful and wanton conduct by employers, and to relieve workers from the pitfall of questions of contributory negligence. *Pathfinder*, 62 Ill. 2d at 563; *Moore v. Industrial Comm'n*, 188 Ill. App. 3d 31, 35 (1989). These purposes are not thwarted or diminished but are enhanced by our conclusion that in order for injuries to be compensable under the Act, there must be some demonstrable medical evidence of injury in order for the claimant/employee to recover. The most basic purpose of the exclusivity provisions of the Act is "to place the cost of industrial accidents upon the industry." *Collier*, 81 Ill. 2d at 241. A part of that larger purpose is also to prevent double recoveries and the proliferation of litigation. *Wells v. Enloe*, 282 Ill. App. 3d 586, 598 (1996). Thus, the employee is barred from seeking common law damages against the employer if the employee previously sought and collected workers' compensation benefits for the same injuries. *Collier*, 81 Ill. 2d at 241-42; *James v. Caterpillar Inc.*, 242 Ill. App. 3d 538, 553 (1993).

Additionally, the employee with purely emotional injuries who has no medical or hospital bills and who has not missed any work as a result of a work-related incident is faced with the arduous task of proving the employer's negligence or willful and wanton misconduct and his or her own lack of contributory negligence. When those risks are factored in with the uncertain potential of having a jury decide whether the employee's story is believable, it is clear that the exclusivity provisions of the Act should not bar lawsuits such as this.

Moreover, if recoverability has no bearing on compensability, then the compensability prong of the four-part test set forth in *Meerbrey* and *Collier* becomes meaningless. In order to escape the bar of the exclusivity provisions of the Act, plaintiffs must "prove either that the injury (1) was not accidental[,] (2) did not arise from his or her employment, (3) was not received in the course of employment[,] or (4) was noncompensable under the Act." *Collier*, 81 Ill. 2d at 237. If compensability is not connected to recoverability, if an injury is compensable merely because it arose out of and in the course of employment, then the fourth prong of the test serves no purpose. We will not interpret supreme court precedent in such a way that any portion of the decision becomes meaningless. "It is fundamental that the appellate court does not have the authority to abandon supreme court precedent." *Orr v. Edgar*, 298 Ill. App. 3d 432, 442 (1998).

Our review of the case law reveals no Illinois cases dealing directly with how compensability is connected to the claimant's recoverability under the Act. Hardee's cites three federal court cases in support of its argument that recoverability has no bearing on compensability: *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 324 (7th Cir. 1992); *Stevens v. Target Stores*, No. 96 C 2291 (N.D. Ill. December 11, 1997); and *DaMato v. Jack Phelan Chevrolet Geo, Inc.*, 927 F. Supp. 283, 291 (N.D. Ill. 1996). However, those cases do not address the specific issue now pending before this court—whether and to what extent compensability is determined by the employee's ability to recover under the Act—and so they are distinguishable. Additionally, as federal case law, they are not binding upon this court. *City of Chicago v. Groffman*, 68 Ill. 2d 112 (1977).

Therefore, for these reasons, we affirm the trial court's ruling that permits plaintiffs' suit against Hardee's at common law as we agree with the trial court that plaintiffs' injuries are not compensable under the Act.

## CONCLUSION

For all of the reasons stated, we affirm the trial court's judgment.

Affirmed.

CHAPMAN and MAAG, JJ., concur.