# Illinois Official Reports

## Appellate Court

---

### *Folta v. Ferro Engineering*, 2014 IL App (1st) 123219

---

| | |
|---|---|
| Appellate Court Caption | ELLEN FOLTA, Individually and as Special Administrator of the Estate of James Folta, Deceased, Plaintiff-Appellant, v. FERRO ENGINEERING, a Division of ON Marine Services Company, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-3219 |
| Filed | June 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The claim of plaintiff's decedent against defendant for the asbestos-related disease he suffered as a result of working with asbestos as part of his employment was improperly dismissed on the ground that the claim was barred by the exclusive remedy provision of the Workers' Compensation Act and the Workers' Occupational Diseases Act, since the decision of the Illinois Supreme Court in *Meerbrey* held that the exclusive remedy provision does not apply where a claim is "not compensable under the Act," and plaintiff's claim fell within the scope of that holding because it was time barred by the expiration of the limitations periods in both Acts, thereby leaving her free to pursue a common-law action. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-6753; the Hon. William D. Maddux, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Nicholas J. Vogelzang, of Connelly & Vogelzang, LLC, of Chicago, and Donald P. Blydenburgh and Jerome H. Block, both of Levy Phillips & Konigsberg, LLP, of New York, New York, for appellant. |
|---|---|
|  | Joshua G. Vincent and Craig T. Liljestrand, both of Hinshaw & Culbertson LLP, of Chicago, for appellee. |
| Panel | JUSTICE TAYLOR delivered the judgment of the court, with opinion. Presiding Justice Gordon and Justice McBride concurred in the judgment and opinion. |

**OPINION**

¶ 1 This is a case of first impression in Illinois. It is a decision that determines when an employee can sue his employer outside of the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2010)) (the Act) and the Workers' Occupational Diseases Act (820 ILCS 310/1 *et seq.* (West 2010)) when the employee first learns of his injury after the expiration of the statute of repose under those acts.

¶ 2 Plaintiff James Folta[1] was allegedly exposed to asbestos at a plant owned by defendant Ferro Engineering from 1966 to 1970. Forty-one years after leaving the employ of Ferro Engineering, on May 17, 2011, plaintiff was diagnosed with peritoneal mesothelioma. By this time, any potential asbestos-related workers' compensation claim against Ferro Engineering was time-barred by the Act's 25-year statute of repose for asbestos-related injuries and the three-year statute of repose for asbestos-related diseases under the Workers' Occupational Diseases Act. Thus, instead of filing a workers' compensation claim, plaintiff filed the instant action in the circuit court of Cook County on June 29, 2011, against Ferro Engineering and 14 other defendants that allegedly supplied Ferro Engineering with products or equipment containing asbestos.

¶ 3 Ferro Engineering filed a motion under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)) to dismiss plaintiff's counts against it, arguing that because plaintiff's injuries arose out of and in the course of his employment, his action was barred by the exclusive remedy provision of the Act (820 ILCS 305/5(a) (West 2010)) and the parallel provision in the Workers' Occupational Diseases Act (820 ILCS 310/11 (West 2010)). Plaintiff argued that the exclusive remedy provision did not bar his action, since that provision does not apply to claims that are "not compensable under the Act." *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 467 (1990). The trial court granted Ferro Engineering's motion to dismiss, and plaintiff now appeals. For the reasons that follow, we reverse and remand.

---

[1]Mr. Folta died during the pendency of this action, and his wife, Ellen Folta, was substituted as plaintiff. For the sake of consistency, we shall refer to Mr. Folta throughout as "plaintiff."

## I. BACKGROUND

In his complaint, plaintiff alleged the following facts. Plaintiff worked for Ferro Engineering from 1966 to 1970 as a nonunion clerk and product tester. During that time, he worked with various asbestos-containing products on a daily basis. Specifically, plaintiff's supervisors allegedly directed him to perform quality control tests on asbestos-containing "hot tops" and "hot top liners." These quality tests required him to cut and saw the products, which created "tremendous amounts of airborne asbestos fibers" that plaintiff would inhale. Plaintiff further alleged that, during the time of his employment, Ferro Engineering was aware of the health risks posed by asbestos dust, but it concealed this information from plaintiff and failed to provide him with respiratory safety equipment. He claimed that as a direct and proximate result of Ferro Engineering's actions, he developed an asbestos-related disease, namely, mesothelioma. Based upon these allegations, plaintiff's complaint sought relief against Ferro Engineering in five counts: negligence (counts VII and XI), premises liability (count XVI), intentional misconduct (count XVII), and fraud (count XVIII). He also alleged various counts, which are not material to this appeal, against other defendants that allegedly supplied Ferro Engineering with asbestos-containing products or equipment.

Ferro Engineering filed a motion to dismiss the counts against it under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)). In that motion, Ferro Engineering argued that plaintiff's claims were barred by the exclusivity provision of the Act, which provides, in relevant part:

> "No common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ***." 820 ILCS 305/5 (West 2010).

Ferro Engineering also argued that plaintiff's claims were barred by the exclusivity provision of the Workers' Occupational Diseases Act (820 ILCS 310/11 (West 2010)), which is homologous for purposes of judicial interpretation (see *Handley v. Unarco Industries, Inc.*, 124 Ill. App. 3d 56, 70 (1984)). Ferro Engineering further noted that these exclusivity provisions were in force during plaintiff's period of employment from 1966 to 1970.

Plaintiff filed a response in which he argued that his suit fell under an exception to the aforementioned exclusivity provisions for claims that are "not compensable under the Act." Plaintiff stated that the Act contains a 25-year statute of repose that runs from the date of the worker's last exposure to asbestos. His last exposure to asbestos was over 40 years ago, in 1970, which was the year that he left the employ of Ferro Engineering. Accordingly, plaintiff argued, he was unable to seek a remedy under either the Act or the Workers' Occupational Diseases Act, and their exclusivity provisions did not apply.

On March 23, 2012, the trial court granted Ferro Engineering's motion to dismiss the counts against it, holding that the running of a statute of repose does not render a cause of action noncompensable under those acts. Plaintiff filed a motion for reconsideration, which the trial court denied in an order dated April 25, 2012. The order explicitly stated that "all claims against Defendant, Ferro Engineering *** are dismissed."

On April 26, 2012, the trial court granted plaintiff's motion to file a second amended complaint, and plaintiff did so on that same day. The second amended complaint incorporated

and realleged the five counts against Ferro Engineering that the court had previously dismissed. Plaintiff additionally sought an Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) finding with respect to the dismissal of his claims against Ferro Engineering, but the court denied the motion.

¶ 10    Meanwhile, the suit continued as to the remaining defendants. On September 13, 2012, plaintiff filed a third amended complaint that was directed solely against Clark Insulation, the only remaining party in the case, and did not make any claims against Ferro Engineering. However, the record does not contain any order of the court granting plaintiff leave to file a third amended complaint.

¶ 11    Plaintiff's cause of action against Clark Insulation was dismissed pursuant to an agreed order on September 25, 2012. Plaintiff then filed a notice of appeal from the March 23, 2012, order granting Ferro Engineering's motion to dismiss and from the April 25, 2012, order denying plaintiff's motion to reconsider.

¶ 12                                    II. ANALYSIS

¶ 13    Plaintiff contends, as he did before the trial court, that his claims against Ferro Engineering fall under an exception to the exclusivity provisions of the Act and the Workers' Occupational Disease Act for claims that are not compensable under those acts. Plaintiff additionally contends that, if those exclusivity provisions were to bar his claims against Ferro Engineering, it would violate his equal protection and due process rights under the Illinois Constitution.

¶ 14                                    A. Waiver

¶ 15    As a threshold matter, Ferro Engineering contends that plaintiff has waived his claims against Ferro Engineering by failing to refer to or incorporate them in his third amended complaint. Whether a dismissed claim has been preserved for review is a question of law that we review *de novo*. *Bonhomme v. St. James*, 2012 IL 112393, ¶ 17.

¶ 16    When certain of plaintiff's claims are dismissed, and plaintiff subsequently files an amended complaint that does not refer to or incorporate those claims, plaintiff has abandoned those claims and may not raise them on appeal. *Id.* ¶¶ 17-19; *Barnett v. Zion Park District*, 171 Ill. 2d 378, 384 (1996). In this case, plaintiff's third amended complaint was directed solely against Clark Insulation, the only remaining defendant in the case, and did not make any claims against Ferro Engineering. Plaintiff, however, argues that the trial court never gave him leave to file a third amended complaint. Thus, according to plaintiff, the operative complaint in this appeal is the second amended complaint, which incorporated and re-alleged the five counts against Ferro Engineering that were in his original complaint.

¶ 17    Plaintiff is correct in stating that an amendment to a pleading that is filed without leave of court must be disregarded on review. *Midwest Bank & Trust Co. v. Village of Lakewood*, 113 Ill. App. 3d 962, 968 (1983) (citing *In re Marriage of Peoples*, 96 Ill. App. 3d 94, 96 (1981)); see also *Greene v. Helis*, 252 Ill. App. 3d 957, 960 (1993) (amended complaint was "a nullity" where it was filed without leave of court); *Condell Hospital v. Health Facilities Planning Board*, 161 Ill. App. 3d 907, 935 (1987) (trial court correctly struck amended complaints that were filed without leave of court). Where an amended complaint is disregarded on appeal due to being filed without leave of court, the prior complaint controls. *Peoples*, 96 Ill. App. 3d at 96.

¶ 18    In the present case, the parties dispute whether plaintiff's third amended complaint was filed with leave of court. The record does not contain any written order granting plaintiff leave to file a third amended complaint. Nevertheless, Ferro Engineering contends that the trial court orally granted leave to file during a pretrial hearing on September 13, 2012. Plaintiff disagrees and further asserts that the transcript of that hearing clearly indicates that plaintiff did not intend to abandon his claims against Ferro Engineering.

¶ 19    We therefore turn to an examination of the September 13, 2012, hearing. At that hearing, counsel for plaintiff asked for leave to file a third amended complaint. He explained that the original complaint had a survival count and a count for loss of consortium, but those counts were mistakenly omitted from the second amended complaint. He asked for leave to add those counts back in.

¶ 20    Clark Insulation, the only remaining defendant in the case, initially objected to plaintiff's motion to amend. Later that day, it withdrew its objection. The court said, "So now are [illegible] the amended complaint? No objection. Granted. File it. Okay. Now it's filed." The following colloquy then occurred:

> "MR. GROSSMARK [counsel for Clark Insulation]: But the allegations will be the same because we're relying on the second amended complaint.
>
> THE COURT: The one that I allowed today?
>
> MR. GROSSMARK: No. No. No. The one that's on file. *** [W]e would like it to be understood that what they're going to do is add the survival claim and add a loss of consortium claim against Clark, but they're not taking anything out of the complaint.
>
> THE COURT: Didn't they have one prepared?
>
> MR. GROSSMARK: No. No. We were just talking about it over the last day or two. Maybe you should look at it beforehand. *** It's not been filed."

Counsel for Clark Insulation said that he did not even have a copy of the proposed third amended complaint. He also said that his agreement was contingent on plaintiff's representation that he was not removing anything from the complaint but merely adding a survival count and a loss of consortium count. The court said, "Oh. Okay. Because I thought once you speak, they're going to come in tomorrow with a whole different kind of complaint." Counsel for plaintiff replied, "We wouldn't do that, your Honor." After that, discussion turned to other matters, and the court did not return to the subject of whether plaintiff had permission to file a third amended complaint.

¶ 21    Ferro Engineering argues that when the trial court said "Granted," that was sufficient to constitute leave to file plaintiff's third amended complaint. However, the subsequent colloquy reveals that even after the trial court made its statement, the parties were still openly discussing the filing and the contents of the third amended complaint. Plaintiff had not prepared copies of the proposed third amended complaint, let alone made them available to the court and to opposing counsel. As a result, the court was somewhat confused as to what plaintiff was actually intending to file. Most importantly, the court was unaware that plaintiff only intended to add counts for survival and loss of consortium, while leaving the rest of the complaint intact. (This confusion was evinced by the court's expectation that plaintiff would "come in tomorrow with a whole different kind of complaint.") Counsel for Clark Insulation had to explain that his agreement to the filing of the third amended complaint was contingent upon plaintiff's assertion that none of the allegations in the second amended complaint would be removed.

Thus, in context, the trial court's statement of "Granted" was not definitive, since the court and the parties were still discussing upon what terms, if any, the filing of a third amended complaint would be allowed.

¶ 22 Moreover, in any event, the trial court never directed that a written order did not need to be prepared regarding the filing of the third amended complaint. See Ill. S. Ct. R. 271 ("When the court rules upon a motion other than in the course of trial, the attorney for the prevailing party shall prepare and present to the court the order or judgment to be entered, unless the court directs otherwise."); *People v. Dylak*, 258 Ill. App. 3d 141, 144 (1994) ("Rule 271 is a rule of procedure and not a suggestion; counsel and courts alike are bound to follow it."); *People ex rel. Person v. Miller*, 56 Ill. App. 3d 450, 459-60 (1977) (court's oral order was "not effective" where defendant failed to subsequently provide a written order pursuant to Rule 271). Thus, the lack of any written order in the record would seem to be dispositive.

¶ 23 Accordingly, the second amended complaint, as the last complaint whose filing was permitted by order of the trial court, is controlling. *Peoples*, 96 Ill. App. 3d at 96 (where an amended complaint is disregarded on appeal due to being filed without leave of court, the prior complaint controls). Since, as noted, the second amended complaint incorporated and realleged plaintiff's counts against Ferro Engineering, plaintiff has not waived those claims on appeal.

¶ 24 B. Exclusive Remedy Provisions of the Act and Workers' Occupational Diseases Act

¶ 25 We therefore turn to the substantive issue in this case, namely, whether the trial court correctly dismissed plaintiff's counts against Ferro Engineering as barred by the exclusive remedy provisions of the Act and the Workers' Occupational Diseases Act. Plaintiff argues, as he did before the trial court, that the exclusive remedy provisions do not apply because his suit is "not compensable under the Act" (*Meerbrey*, 139 Ill. 2d at 467), in that any potential claim under the Act was time-barred before he became aware of his injury.[2] We review the trial court's section 2-619 dismissal of plaintiff's claims *de novo*. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). Our review of the trial court's construction of the Act and the Workers' Occupational Diseases Act is also *de novo*. *Toothman v. Hardee's Food Systems, Inc.*, 304 Ill. App. 3d 521, 525 (1999) (citing *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 452 (1997)).

¶ 26 The Act is designed to provide financial protection to workers for accidental injuries arising out of and in the course of their employment. *Meerbrey*, 139 Ill. 2d at 462 (citing *Pathfinder Co. v. Industrial Comm'n*, 62 Ill. 2d 556 (1976)). The Act imposes liability without fault upon the employer and, in return, prohibits employees from bringing common-law actions against their employers. *Meerbrey*, 139 Ill. 2d at 462; see also *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 237 (1980) (" 'So far as persons within the industry are concerned, the Workmen's Compensation Act eliminated fault as a basis of liability.' " (quoting *Rylander*

---

[2]Because the Act and the Workers' Occupational Diseases Act are homologous for purposes of judicial interpretation (*Handley*, 124 Ill. App. 3d at 70), any exception to the exclusivity provision of the Act would apply equally to the exclusivity provision of the Workers' Occupational Diseases Act. *James v. Caterpillar Inc.*, 242 Ill. App. 3d 538, 549-50 (1993).

*v. Chicago Short Line Ry. Co.*, 17 Ill. 2d 618, 628 (1959))). To this end, the Act contains an exclusive remedy provision, which reads as follows:

"No common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ***." 820 ILCS 305/5 (West 2010).

In a similar vein, section 11 of the Workers' Occupational Diseases Act provides: "The compensation herein provided for shall be the full, complete and only measure of the liability of the employer bound by election under this Act and such employer's liability for compensation and medical benefits under this Act shall be exclusive and in place of any and all other civil liability whatsoever ***." 820 ILCS 310/11 (West 2010). The purpose of these exclusivity bars is twofold: they are intended both to prevent double recovery and to prevent the proliferation of litigation. *Collier*, 81 Ill. 2d at 241.

¶ 27       Nevertheless, the scope of these exclusivity bars is not absolute. Our supreme court has explained that an injured employee may still bring a common-law action against his employer if he can prove any of the following exceptions: (1) the injury was not accidental; (2) the injury did not arise from his employment; (3) the injury was not received during the course of employment; or (4) the injury is "not compensable under the Act." *Meerbrey*, 139 Ill. 2d at 463; see also *Collier*, 81 Ill. 2d at 237.

¶ 28       In this appeal, plaintiff does not argue that his injury was not accidental. Nor does he dispute the fact that his injury arose from and was received during the course of his employment. Plaintiff's sole argument is that the fourth *Meerbrey* exception, for injuries that are "not compensable under the Act," should apply to enable him to bring a common-law suit against his former employer where any potential claim for recovery under the Act or the Workers' Occupational Diseases Act was time-barred before he became aware of his injury. See 820 ILCS 305/6(d) (West 2010) ("In any case of injury caused by exposure to *** asbestos, unless application for compensation is filed with the Commission within 25 years after the [employee was so exposed], the right to file such application shall be barred."); 820 ILCS 310/1(f) (West 2010) (in cases of occupational disease caused by inhalation of asbestos dust, a worker is entitled to compensation under the Workers' Occupational Diseases Act only if disablement occurs within three years of the worker's last exposure). This is a case of first impression in Illinois; no previous case has ruled upon whether a time-barred workers' compensation claim is considered "not compensable under the Act" for *Meerbrey* purposes.

¶ 29       Thus, we turn to consider the meaning of the phrase "not compensable under the Act" as used in *Meerbrey* and its progeny. Plaintiff urges us to find that an injury is not compensable under the Act whenever a plaintiff, through no fault of his own, is barred from seeking recovery under the Act. Ferro Engineering, meanwhile, argues that we should adopt a narrow reading of the phrase and find that an injury is not compensable only if it does not arise out of and in the course of employment.

¶ 30       Although the *Meerbrey* decision does not discuss in detail the meaning of compensability, its text is still instructive. As noted, *Meerbrey* lists four distinct exceptions under which an employee may bring a common-law cause of action against his employer: "(1) that the injury was not accidental; (2) that the injury did not arise from his or her employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the Act." *Meerbrey*, 139 Ill. 2d at 463 (citing *Collier*, 81 Ill. 2d at 237). It is

therefore apparent that Ferro Engineering's proposed definition of compensability would render the fourth *Meerbrey* exception superfluous, since *Meerbrey* already contains explicit exceptions for injuries that did not arise from a worker's employment and injuries that were not received during the course of employment. *Meerbrey*, 139 Ill. 2d at 463. We shall not interpret our supreme court's decision in such a way as to render part of it meaningless. See *Orr v. Edgar*, 298 Ill. App. 3d 432, 442 (1998) ("It is fundamental that the appellate court does not have the authority to abandon supreme court precedent.").

¶ 31       Indeed, it is for this very reason that this court has, on multiple occasions, rejected Ferro Engineering's proposed definition of compensability and instead articulated a definition related to plaintiff's ability to recover under the Act. *Toothman*, 304 Ill. App. 3d 521; *Schusse v. Pace Suburban Bus Division of the Regional Transportation Authority*, 334 Ill. App. 3d 960 (2002). We turn now to an examination of those cases.

¶ 32       In *Toothman*, several restaurant employees sued their employer for false imprisonment, assault, and battery arising from an incident in which their managers strip-searched the employees in an attempt to find missing money. *Toothman*, 304 Ill. App. 3d at 523-24. Plaintiffs' claimed damages consisted purely of emotional suffering; they had no medical or hospital bills and did not take any time off work as a result of the incident. *Id.* at 531, 533. Upon these facts, the *Toothman* court held that the plaintiffs' alleged injuries were "not compensable under the Act" for *Meerbrey* purposes and that the plaintiffs were therefore entitled to bring a common-law action against their employer. *Id.* at 525. It based this decision upon its finding that no compensation was available to the plaintiffs under the Act, since they had no medical or hospital bills and did not take any time off work as a result of the incident. *Id.* at 533; see *Schusse*, 334 Ill. App. 3d at 967 (the Act typically limits recovery to medical bills, rehabilitation-related costs, and temporary or permanent, partial or total disability (citing 820 ILCS 305/8 (West 2000))).

¶ 33       The *Toothman* defendant, like the defendant in the instant case, argued that compensability was not connected to recoverability and that an injury should be considered compensable whenever it arose out of and in the course of employment. *Toothman*, 304 Ill. App. 3d at 534. The court rejected this claim, stating:

> "[I]f recoverability has no bearing on compensability, then the compensability prong of the four-part test set forth in *Meerbrey* and *Collier* becomes meaningless. *** [I]f an injury is compensable merely because it arose out of and in the course of employment, then the fourth prong of the test serves no purpose. We will not interpret supreme court precedent in such a way that any portion of the decision becomes meaningless." *Id.*

Thus, the court concluded that, where plaintiffs' injuries were of such a nature that they could not recover under the Act, the fourth *Meerbrey* exception would apply to allow them to bring a common-law suit against their employer.

¶ 34       The court reached a similar condition in *Schusse*, 334 Ill. App. 3d 960. In that case, the plaintiff bus driver was injured on the job when his driver's seat collapsed. *Id.* at 962. The following year, his employer replaced the suspension system for the driver's seat in the bus at issue. *Id.* Subsequently, plaintiff brought suit against the manufacturers of the bus and the driver's seat. *Id.* He later amended his complaint to add a claim against his employer for negligent spoliation of evidence. *Id.* at 963. The trial court dismissed the employer from the action, finding that plaintiff's suit against it was barred by the exclusivity provisions of the Act. *Id.*

¶ 35    The *Schusse* court reversed, finding that plaintiff's spoliation claim was "not compensable under the Act" under *Meerbrey*. *Id.* at 969. The court explained that, under Illinois law, damages for spoliation are considered separate and distinct from damages for the underlying injury. *Id.* at 966 (citing *Fremont Casualty Insurance Co. v. Ace-Chicago Great Dane Corp.*, 317 Ill. App. 3d 67, 75 (2000)). Thus, damages for spoliation are not recoverable under the Act. *Schusse*, 334 Ill. App. 3d at 967 (citing 820 ILCS 305/8 (West 2000)). Accordingly, since the plaintiff was, in fact, unable to be compensated under the Act, the *Schusse* court held that his spoliation claim fell outside the Act's exclusivity provision. *Id.* at 968-69. As in *Toothman*, the court also squarely rejected defendant's claim that all accidental injuries that arise out of and in the course of employment should be considered compensable under the Act, stating: "If an accidental injury is compensable merely because it arose out of and in the course of employment, then the fourth prong of the *Meerbrey* test is superfluous. This court will not interpret *Meerbrey* in such a way that the fourth prong becomes meaningless." *Id.* at 969.

¶ 36    In the present case, as in *Toothman* and *Schusse*, plaintiff's injury is quite literally not compensable under the Act, in that all possibility of recovery is foreclosed because of the nature of plaintiff's injury. As discussed above, it is undisputed that any potential claim under the Act was barred by the Act's statute of repose long before plaintiff learned of his injury. The Act provides a 25-year statute of repose for asbestos-related injuries, and the Workers' Occupational Diseases Act provides a 3-year statute of repose for asbestos-related diseases, while plaintiff's mesothelioma was not diagnosed until 41 years after leaving the employ of Ferro Engineering. Through no fault of his own, plaintiff never had an opportunity to seek compensation under the Act. The same is true of any potential claim under the Workers' Occupational Diseases Act. Under these facts, we hold that the fourth *Meerbrey* exception applies to allow plaintiff to bring a common-law suit against his employer.

¶ 37    Such an interpretation of compensability is consistent with the purposes of the Act's exclusivity bar as explained by our supreme court in *Collier*, 81 Ill. 2d 229, a case which the *Meerbrey* court cited with approval. The *Collier* court stated that the exclusivity bar is rooted in the fear of double recovery and the desire to prevent the proliferation of litigation. *Id.* at 241. In this case, there is no fear of double recovery, since plaintiff is barred from seeking any form of recovery under the Act. For the same reason, permitting plaintiff to bring suit against his employer in the circuit court will not cause the proliferation of litigation; he has but one avenue to seek redress of his alleged injuries. Thus, plaintiff's suit does not contravene the purposes of the Act's exclusivity provision, nor would barring his suit further those purposes.

¶ 38    The facts of *Collier* are instructive here, as they are essentially the converse of the facts in the instant case. In *Collier*, the plaintiff brought an action against his employer, among others, alleging that the company nurse failed to provide him proper assistance after he suffered a heart attack while at work. *Id.* at 232-34. However, plaintiff had previously reached a settlement agreement with his employer in which he released his employer from all liability under the Act in exchange for a lump-sum payment. *Id.* at 234. The settlement was approved by the Industrial Commission. *Id.* Under these facts, the *Collier* court found that the exclusivity provision of the Act barred his suit, holding that "where an employee injured by a coemployee has collected compensation on the basis that his injuries were compensable under the Act, the injured employee cannot then allege that those injuries fall outside the Act's provisions." *Id.* at 241. Conversely, where an injured employee is affirmatively barred from seeking compensation on the basis that his injuries were compensable under the Act, it is consonant

with *Collier* that the employee be able to allege in court that his injuries fall outside the Act's provisions.

¶ 39    Notwithstanding the foregoing, Ferro Engineering cites *Sjostrom v. Sproule*, 33 Ill. 2d 40 (1965), and *Unger v. Continental Assurance Co.*, 107 Ill. 2d 79 (1985), arguing that these cases stand for the proposition that a "compensable" injury under the Act is synonymous with an injury that arises out of or in the course of employment. As shall be discussed below, we disagree that these cases are incompatible with the *Meerbrey* court's delineation of compensable injuries as separate from line-of-duty injuries. Moreover, we note that, even if these cases were in conflict with *Meerbrey*, they would be superseded by the more recent *Meerbrey*.

¶ 40    In *Sjostrom*, the plaintiff was injured in a car accident that occurred as he was being driven to work by another employee, and he sued the other employee for his injuries. *Sjostrom*, 33 Ill. 2d at 41. The trial court directed a verdict for the defendant, finding that plaintiff's suit was barred by the exclusivity provision of the Act, and plaintiff appealed. *Id.* The sole question raised on appeal was whether the plaintiff's injuries arose out of or in the course of his employment. There was no allegation that the injuries at issue were not accidental or were otherwise outside the ambit of the Act. Within that limited context, the *Sjostrom* court stated:

> "While [the Act's exclusivity provision] refers to an employee 'engaged in the line of his duty', it is applicable only if the injuries received are compensable, and the 'line of duty' test is therefore construed as identical to the general test of compensability, 'arise[s] out of and in the course of employment.' " *Id.* at 43 (quoting *Christian v. Chicago & Illinois Midland Ry. Co.*, 412 Ill. 171, 174 (1952)).

It is this statement upon which Ferro Engineering seeks to rely. However, under the particular facts of *Sjostrom*, there was no real debate that, if plaintiff's injury arose out of and in the course of his employment, plaintiff would in fact be eligible to receive compensation under the Act. It was in this context that the *Sjostrom* court made the above statement. The court did not purport to state that all injuries that arise out of and in the course of employment are *ipso facto* compensable under the Act. Indeed, any such statement would be directly contrary to *Meerbrey* and *Collier*, which clearly set forth noncompensable injuries as a category separate from injuries that do not arise out of or in the course of employment.

¶ 41    A similar analysis applies to *Unger*, 107 Ill. 2d 79, which, like *Sjostrom*, was decided before the *Meerbrey* court reaffirmed lack of compensability as a distinct exception to the Act's exclusivity bar. In *Unger*, plaintiff brought suit against a company physician who failed to properly diagnose a cancerous lesion during a company-sponsored physical examination. *Id.* at 82. In considering whether plaintiff's suit was barred by the Act, the *Unger* court stated that

> "an employee is precluded from maintaining a common law action against a co-employee *only* if the injured employee was 'engaged in the line of his duty' at the time the injury was sustained. The 'line of duty' test has been interpreted by this court in the exact manner as the general test of compensability under the Act." (Emphasis in original.) *Id.* at 85 (citing *Sjostrom*, 33 Ill. 2d at 43).

In this case, as in *Sjostrom*, the line-of-duty exceptions (*i.e.*, the second and third *Meerbrey* exceptions) were the only exceptions potentially at issue. By contrast, in the instant case, the parties agree that plaintiff's injuries arose out of and in the course of his employment but that plaintiff is nevertheless statutorily barred from bringing a claim under the Act. It is this kind of circumstance that was not contemplated by the *Sjostrom* and *Unger* courts but was provided

for by the *Meerbrey* court when it explicitly stated that common-law suits against employers were permitted for injuries that were not compensable under the Act. *Meerbrey*, 139 Ill. 2d at 463.

¶ 42    Ferro Engineering finally contends that, if we adopt plaintiff's construction of *Meerbrey* and the Act, it would lead to absurd results, in that any employee whose workers' compensation claim was denied by the Industrial Commission would be free to bring a suit against his employer. We disagree. Our holding is confined to the specific fact pattern before us today, in which an injured employee's potential claim under the Act is time-barred before he ever learns of it, thus necessarily depriving him of any potential for compensation under the Act.

¶ 43    In this regard, we note that other states have adopted the position urged by plaintiff in this action, and defendant has not pointed to any absurd or otherwise problematic consequences resulting therefrom. For instance, in *Gidley v. W.R. Grace & Co.*, 717 P.2d 21 (Mont. 1986), the Montana Supreme Court held that where an employee was not eligible for compensation under the then-Montana occupational disease act (MODA) because the period of limitations expired before he became aware of his injury, that employee was not subject to MODA's exclusivity provisions but had a common-law right of action against his employer. See also *Nelson v. Cenex, Inc.*, 2008 MT 108, ¶ 33, 342 Mont. 371, 181 P.3d 619 (where employee was diagnosed with asbestos-related lung disease past the deadline for filing a claim for occupational disease benefits, Supreme Court of Montana held that, under *Gidley*, he had a right to bring suit against his employer). Similarly, in *Tooey v. AK Steel Corp.*, 81 A.3d 851, 855 (Pa. 2013), the Supreme Court of Pennsylvania held that claims for occupational disease which manifested outside the 300-week period prescribed by the Pennsylvania Workers' Compensation Act (PWCA) did not fall within the purview of the PWCA, and, therefore, that the exclusivity provision of the PWCA did not preclude injured employees from filing common-law claims against their employers. Defendant argues that these cases are not directly applicable to the case at hand, since they involve different statutory language than the Illinois statutes at issue here. Nevertheless, they are still persuasive as to their result, insofar as they show that other states have chosen to give injured employees a remedy via the courts when their claims are time-barred under applicable workers' compensation statutes.

¶ 44    Thus, for the foregoing reasons, we reverse the judgment of the trial court, insofar as we find that plaintiff's suit against Ferro Engineering is not barred by the exclusivity provisions of the Act and the Workers' Occupational Diseases Act, and we remand for further proceedings. Because of our resolution of this issue, we need not consider plaintiff's claim that, if the Act and the Workers' Occupational Diseases Act were to bar him from bringing suit, such provisions would be in violation of his rights under the Illinois constitution. See *People v. Alcozer*, 241 Ill. 2d 248, 253 (2011) (courts will avoid the adjudication of constitutional issues where a case can be decided on other grounds).

¶ 45    Reversed and remanded.